[No. G010129. Fourth Dist., Div. Three. Nov. 25, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE BARNEY CUMPIAN, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976(b), part II is not published.

## Counsel

Russell Iungerich, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**MOORE, J.**—A jury convicted George Barney Cumpian (defendant) of second degree robbery, and, in a bifurcated court trial after a jury waiver, the court found that he had suffered a prior term of imprisonment pursuant to Penal Code section 667.5, subdivision (b).[1] He was sentenced to prison for the midterm of three years for the robbery, with a consecutive term of one year for the prior term of imprisonment, for an aggregate sentence of four years.

On appeal, defendant contends the jury committed misconduct by performing an experiment which violated both California law and the United

---

[1] All statutory references are to the Penal Code.

States Constitution. He also alleges there was insufficient evidence to convict him of robbery.

FACTS

On April 5, 1990, Kmart security guard Nelson Laurie watched as defendant removed a duffel bag from a display rack and placed two police-type flashlights into it. Laurie followed as defendant left the store without paying. Once outside, as defendant was about to enter his car, Laurie patted him on the shoulder, showed him his badge, and stated "K-Mart security. I want you to go back with me into the store." The duffel bag was at defendant's side and the strap around his neck. When Laurie and defendant were approximately 50 feet from the front of the store, defendant swung a large safety pin at Laurie 3 times. Laurie backed off and the safety pin narrowly missed him. Defendant then ran away.

Santa Ana Police Officer Wopershall was in the Kmart store on another matter and heard Laurie yell that defendant had stolen property and was running away. Laurie pointed defendant out, and Wopershall followed him in his patrol car. After losing sight of defendant, Wopershall looked into the yard of a house and saw him hiding behind a brick wall. Wopershall and Laurie, who had also given chase, took defendant into custody. The duffel bag containing the flashlights was still hanging over his neck and the safety pin, with three keys attached to it, was on the ground next to him.

Defendant testified he had just unhooked his key holder from his belt when someone grabbed his right arm. He swung his arm to free himself, not knowing who it was that had grabbed him; he claimed Laurie never identified himself as a security guard nor displayed a badge. He took off running out of embarrassment, since he was a Christian and was involved in a jail ministry. He had not intended to injure Laurie and had unsuccessfully tried to drop the duffel bag, which was tightly strapped to his body. He claimed his only intent was to commit a "simple petty theft," not a robbery.

DISCUSSION

I. *Jury Misconduct*

Defendant first argues the jury performed an illegal experiment during deliberations which constituted misconduct thereby compelling reversal under California law and the United States Constitution. After his conviction, defendant filed a motion for new trial alleging the jury performed an unlawful experiment during deliberations. Two jurors submitted

signed declarations under penalty of perjury alleging the same facts: "During jury deliberations in the jury room I and other jurors were permitted to examine certain items of evidence including a duffel bag and flashlight. [¶] While examining the duffle [*sic*] bag several jurors placed the duffel bag over their torso, with the strap of the duffel bag across their torso, in a fashion similar to that described by the witnesses during the trial. These jurors then attempted removing the duffel bag to determine how easily and how long it would actually take to remove the duffle [*sic*] bag from one's body. The intent of the jurors was to determine whether the accused, faced with apprehension by the security guard, could easily have removed the duffle [*sic*] bag to avoid arrest. If the bag was easily and quickly removable this would support a conclusion that the accused intended to escape with the bag."

Defendant contends this was an unlawful experiment directed at the issue of intent, the primary issue in the case, and was prejudicial misconduct. He claims that since he testified he attempted to abandon the bag, and since his use of force had to be concurrent with an intent to steal, if believed, he would be guilty only of petty theft.

Defendant made essentially the same argument in his motion for new trial, which was denied. The trial court stated: "I'm finding that the conduct of the jury, of some jurors in the jury room, was not of such a character as would be likely to influence a verdict improperly. So your motion for new trial is denied."

■ "A motion for new trial may be made on the grounds of juror misconduct or unauthorized receipt of evidence by the jury. [Citation.] 'It is the trial court's function to resolve conflicts in the evidence, to assess the credibility of the declarants, and to evaluate the prejudicial effect of the alleged misconduct . . . . However, in reviewing an order *denying* a motion for new trial based on jury misconduct, as distinguished from an order *granting* a new trial on that ground, a reviewing court has a constitutional obligation . . . to review the entire record, including the evidence, and to determine independently whether the act of misconduct, if it occurred, prevented the complaining party from having a fair trial. [Citations.]' " (*People* v. *Wisely* (1990) 224 Cal.App.3d 939, 947 [274 Cal.Rptr. 291], quoting *Andrews* v. *County of Orange* (1982) 130 Cal.App.3d 944, 954-955 [182 Cal.Rptr. 176]; see also *Glage* v. *Hawes Firearms Co.* (1990) 226 Cal.App.3d 314, 321 [276 Cal.Rptr. 430]; *Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388, 417, fn. 10 [185 Cal.Rptr. 654, 650 P.2d 1171].) This court must undertake a de novo review to determine whether there was misconduct, and, if so, whether that misconduct prejudiced defendant and requires his conviction be reversed.

■ Jury misconduct has the same effect on both civil and criminal litigants. (*Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d at p. 417, fn. 10.) Jury misconduct raises a presumption of prejudice, and " 'unless the prosecution rebuts that presumption . . . , the defendant is entitled to a new trial.' " (*In re Stankewitz* (1985) 40 Cal.3d 391, 402 [220 Cal.Rptr. 382, 708 P.2d 1260], quoting *People* v. *Pierce* (1979) 24 Cal.3d 199, 207 [155 Cal.Rptr. 657, 595 P.2d 91].) "The presumption of prejudice 'may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party. . . .' " (*People* v. *Miranda* (1987) 44 Cal.3d 57, 117 [241 Cal.Rptr. 594, 744 P.2d 1127], quoting *Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d at p. 417.) "Whether a defendant has been prejudiced . . . depends upon 'whether the jury's impartiality has been adversely affected, whether the prosecution's burden of proof has been lightened and whether any asserted defense has been contradicted.' " (*People* v. *Miranda, supra,* at p. 117, quoting *People* v. *Martinez* (1978) 82 Cal.App.3d 1, 22 [147 Cal.Rptr. 208].)

Here, the prosecution proffered no evidence whatsoever that would rebut prejudice. Accordingly, if the jury's actions here constituted misconduct, it would be prejudicial, since the alleged experiment involved an asserted defense. (See *People* v. *Miranda, supra,* 44 Cal.3d at p. 117; see also *People* v. *Martinez, supra,* 82 Cal.App.3d at p. 22.) ■ We must thus decide whether the actions of the jurors in strapping the bag around their necks in the fashion indicated at trial constituted jury misconduct.

The jury was instructed at the beginning of the trial pursuant to CALJIC No. 1.03 (5th ed. 1988 bound vol.) that, "You must decide all questions of fact in this case from the evidence received in this trial and not from any other source. [¶] You must not make any independent investigation of the facts or the law or consider or discuss facts as to which there is no evidence. This means, for example, that you must not on your own visit the scene, conduct experiments, or consult reference works or persons for additional information. . . ." Relying on *People* v. *Pierce, supra,* 24 Cal.3d 199, defendant contends the jury's actions violated this directive and thus constituted misconduct giving rise to a presumption of prejudice. In *Pierce,* the Supreme Court held that a juror's discussion of a subject connected with the trial was misconduct giving rise to a presumption of prejudice. (*Id.,* at p. 207; see also *People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156-157 [141 Cal.Rptr. 698, 570 P.2d 1050].)

In construing the critical sentence ". . . you must not on your own visit the scene, conduct experiments, or consult reference works or persons for

additional information. . . ," the phrase "on your own" clearly modifies the phrase "conduct experiments." This can logically be interpreted in two ways: first, as informing the jurors that experiments outside the jury room with less than the entire jury present are prohibited, and second, as informing them that they must not deviate from the evidence which was adduced at trial and delve into other, new areas on their own.

The cases have referred to jury experiments in the context of *extrinsic* evidence and *outside* influences, which are impermissible for a jury to consider. This comports with their duty not to experiment on their own. In *People* v. *Marshall* (1990) 50 Cal.3d 907 [269 Cal.Rptr. 269, 790 P.2d 676], a juror with a law enforcement background erroneously stated his understanding of the law to other jurors. This was held to be misconduct, though harmless under the facts. (*Id.* at pp. 949-950.) Resorting to unauthorized and thus extrinsic dictionary definitions of words has consistently been held to be error. (*People* v. *Karis* (1988) 46 Cal.3d 612, 642 [250 Cal.Rptr. 659, 758 P.2d 1189].) Similarly, reference by jurors to other outside sources, such as newspaper articles, books or magazines *not in evidence* has given rise to misconduct and findings of prejudice. (See, e.g., *People* v. *Holloway* (1990) 50 Cal.3d 1098, 1108 [269 Cal.Rptr. 530, 790 P.2d 1327][juror read article about defendant's prior record even though instructed not to do so]; *People* v. *Underwood* (1986) 181 Cal.App.3d 1223, 1228 [226 Cal.Rptr. 840] [jury consulted books not in evidence].)

The focus of federal cases involving experiments and jury misconduct has also been on the receipt of extrinsic evidence or outside influences. (See, e.g., *Parker* v. *Gladden* (1966) 385 U.S. 363, 364-366 [17 L.Ed.2d 420, 422-424, 87 S.Ct. 468] [bailiff made comments regarding trial and defendant's guilt to jurors]; *Marino* v. *Vasquez* (4th Cir. 1987) 812 F.2d 499, 501-507 [during visit with ex-husband, juror experimented with a new handgun to see if the trigger could be pulled in the relevant position].)

The question is whether the jury, in attempting to replicate the position of the bag on defendant's shoulder while in the jury room, received *extrinsic* evidence or was subjected to an *outside* influence. There was much testimony at trial regarding the manner in which defendant held the bag and the position of the bag. Laurie testified defendant was carrying the bag "From his neck down. From his neck. By the strap." The bag, which was received into evidence, was shown to Laurie and the prosecutor asked him to demonstrate how the bag was strapped on. After Laurie did so, the prosecutor stated, "For the record, you put strap [*sic*] over your right shoulder so it crosses over to the left side of your neck; is that correct? So it rest [*sic*] on the left side of your neck, so the strap comes across your chest and the bag

comes under your right arm, yes?" Laurie responded, "Yes. . . . That's the way he had the bag." Laurie also testified the defendant never made any motion as if he was trying to drop the bag.

The jurors had access to the same bag in the jury room at the same time, and, according to the admissible portion of the declarations, strapped the duffel bag across their torsos "[i]n a fashion similar to that described by the witnesses during the trial."

In *Marino* v. *Vasquez, supra,* 812 F.2d 499, a juror attempted to see if she could pull the trigger of a different gun than that introduced at trial. This was determined to be extrinsic evidence. In *People* v. *Phillips* (1981) 122 Cal.App.3d 69 [175 Cal.Rptr. 703], a juror went home and conducted an experiment with sodium bicarbonate, which had allegedly been used to murder a small child. The court, holding this to be misconduct, though not prejudicial, stated " 'Jurors cannot be permitted to investigate a case outside the courtroom . . . .' " (*Id.* at p. 81, quoting *People* v. *Conkling* (1896) 111 Cal. 616, 628 [44 P. 314].) In *Conkling,* relied on by defendant, two jurors procured a rifle and experimented with it outside the jury room to determine the distance that powder marks would be deposited after firing a gun. The court reversed defendant's conviction, stating, "[j]urors cannot be permitted to investigate the case outside the courtroom. They must decide the guilt or innocence of the defendant upon the evidence introduced at the trial." (*Id.* at p. 628.)

In *People* v. *Castro* (1986) 184 Cal.App.3d 849 [229 Cal.Rptr. 280], which defendant also relies on, an officer testified about observations he made using binoculars. One of the jurors then went home and, in order to test the officer's testimony, used a pair of binoculars to determine what could be seen from that distance. This was held to be misconduct and resulted in a reversal of defendant's conviction. The court stated "The only reasonable inference to be drawn from [the juror's] declaration is that he conducted his own at-home experiment to determine if [the officer] could have identified appellant as the culprit . . . . Thus, the jury received evidence outside of the courtroom which appellant was unable to meet or answer thereby establishing jury misconduct." (*Id.* at p. 853.)

All of the cases that have been cited thus far involve situations where the experiments were performed by one or several jurors outside of deliberations using items not introduced into evidence, resulting in outside influences or extrinsic evidence permeating the jury's deliberations. ■ As the court stated in *Higgins* v. *L.A. Gas & Electric Co.* (1911) 159 Cal. 651 [115 P. 313]: "It is a fundamental rule that all evidence shall be taken in open court

and that each party to a controversy shall have knowledge of, and thus be enabled to meet and answer, any evidence brought against him. It is this fundamental rule which is to govern the use of such exhibits by the jury. They may use the exhibit according to its nature to aid them in weighing the evidence which has been given and in reaching a conclusion upon a controverted matter. They may carry out experiments within the lines of offered evidence, but if their experiments shall invade *new fields* and they shall be influenced in their verdict by discoveries from such experiments which will not fall fairly within the scope and purview of the evidence, then, manifestly, the jury has been itself taking evidence without the knowledge of either party, evidence which it is not possible for the party injured to meet, answer or explain." (*Id.* at p. 656-657, italics added.)

Here, the jury's use of the exhibit did not invade *new fields* nor did their experiment with the duffel bag involve matters not within the scope and purview of the evidence. In fact, the declarations state that the jury used the exhibit in a similar fashion to that testified to and demonstrated by victim Laurie. It is not the use of the exhibit which creates misconduct but its use in some manner outside the offered evidence.

A very similar factual scenario was presented in *People* v. *Cooper* (1979) 95 Cal.App.3d 844 [157 Cal.Rptr. 348]. There, defendant was convicted of possession of heroin for sale after a police officer saw him reach toward his waistband and throw a shiny object which turned out to be a baggie containing heroin onto the lawn of a residence. After he was convicted, defendant filed a motion for new trial, which contained an affidavit from one of the jurors reciting three instances of alleged misconduct, one of which consisted of the jury's "reenactment" of defendant's throwing the plastic bag. The juror indicated that, based upon the reenactment, the jury " 'confirmed . . . the police officer's testimony and in-court demonstrations. . . .' " (*Id.* at p. 852.) In affirming the denial of defendant's motion for new trial on the basis that no misconduct occurred, the court stated: "It is clear . . . that experiments by the jury are prohibited only where the result is the production of 'new' evidence. [Citation.] . . . The general rule is that the jurors may engage in experiments which amount to no more than a careful examination of the evidence which was presented in court. [Citation.] [¶] The experiment in the present case did not result in the generation of new evidence. [Citation.] During the trial, [the officer] had demonstrated the manner in which defendant had thrown the contraband. The jurors simply repeated the officer's reenactment. Nothing requires that the jury's deliberations be entirely verbal, and we would expect a conscientious jury to closely examine the testimony of the witnesses, no less so when that testimony takes the form of a physical act. There was no error in denying the motion for new trial on this ground." (*Id.* at pp. 853-854.)

Defendant seeks to distinguish *Cooper* on three grounds. First, he claims *Cooper* is misguided in its reliance on *Higgins*, because *Higgins* did not involve an experiment, whereas *Cooper* did. Defendant fails to realize, however, that our Supreme Court in *Higgins* expressly authorized the conducting of experiments in the jury room so long as those experiments are "within the lines of offered evidence . . ." and do not "invade new fields. . . ." (*Higgins* v. *L.A. Gas & Electric Company, supra*, 159 Cal. at p. 657.) Second, defendant contends *Higgins* contradicts the express language of section 1181, subdivision (2), which states that a new trial is proper "when the jury has received any evidence out of court. . . ." However, defendant fails to realize that the jury in *Higgins* did not receive any evidence out of court, for if they had done so it would have constituted the invasion of new fields beyond the scope and purview of the evidence. Based on *Higgins* and *Cooper*, it is clear the concept of the receipt of evidence out of court entails evidence not presented during the trial; yet here, during the trial, there was both verbal and demonstrative evidence concerning the way the duffel bag was slung over defendant's neck and body. The jury's re-enactment of that evidence did not constitute the receipt of evidence out of court, but was merely an experiment directed at proffered evidence.

Finally, defendant contends *Cooper* improperly relies on *Higgins* in adopting a standard for jury misconduct, in that *Higgins* was a civil case and the standard for jury misconduct is higher in criminal cases. As authority for this proposition, defendant cites *Andrews* v. *County of Orange, supra*, 130 Cal.App.3d 944 and *Locksley* v. *Ungureanu* (1986) 178 Cal.App.3d 457 [223 Cal.Rptr. 737], both of which deal with the issue of prejudice and the People's burden to rebut prejudice once it has been presumed. Obviously, prejudice is not presumed until misconduct has been shown, and in both cases jury misconduct was demonstrated. Those cases do not discuss what constitutes misconduct. When there is no misconduct, there cannot be any prejudice.

We accept the premise that the jury performed an experiment when various jurors strapped the bag onto themselves in the manner described and demonstrated at trial. However, not every experiment constitutes jury misconduct. "[J]urors must be given enough latitude in their deliberations to permit them to use common experiences and illustrations in reaching their verdicts. [Citations.]" (*United States* v. *Avery* (6th Cir. 1983) 717 F.2d 1020, 1026.) To prohibit jurors from analyzing exhibits in light of proffered testimony would obviate any reason for sending physical evidence into the jury room in the first instance. Is it misconduct for a juror to don a jacket introduced into evidence? Does a jury commit misconduct if they construct

their own diagram in the jury room?[2] The answers to these questions must necessarily focus on whether the experiments were based on evidence received in court. Experiments which are "within the lines of offered evidence . . ." and which do not "[i]nvade new fields . . ." do not constitute misconduct. (*Higgins* v. *L.A. Gas & Electric Co.*, *supra*, 159 Cal. at p. 657.) As the jury's experiment was based on evidence received in court, there was no jury misconduct.[3] Therefore, defendant's motion for new trial was properly denied.

## II.   *Sufficiency of the Evidence**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Sills, P. J., and Sonenshine, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 20, 1992. Kennard, J., was of the opinion that the petition should be granted.

---

[2]No, as long as the diagram is based on evidence received in court, even if its maker is a professional engineer. (See *Wagner* v. *Doulton* (1980) 112 Cal.App.3d 945, 950 [169 Cal.Rptr. 550].)

[3]We do not reach defendant's contention that the United States Constitution requires that defendant's conviction be reversed, as this argument must necessarily be predicated upon a finding of jury misconduct in the first instance, and we have found that here there was no misconduct. There can be no violation of the Sixth Amendment when the evidence developed against defendant comes from the trial itself as opposed to some outside influence. (*Parker* v. *Gladden*, *supra*, 385 U.S. at p. 364 [17 L.Ed.2d at p. 422], citing *Turner* v. *State of Louisiana* (1965) 379 U.S. 466, 472-473 [13 L.Ed.2d 424, 428-429, 85 S.Ct. 546].)

*See footnote, *ante*, page 307.