[No. C065808. Third Dist. May 23, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
VINESH KUMAR SINGH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\* *Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and III.

**368**

## COUNSEL

Geoffrey M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Michael A. Canzoneri and Heather S. Gimle, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOCH, J.**—A jury convicted defendant Vinesh Kumar Singh of inflicting corporal injury resulting in a traumatic condition upon a cohabitant. (Pen. Code, § 273.5, subd. (a).)[1] The jury also found true the allegations that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)) and personally used a deadly weapon, a knife, in the commission of the offense (§ 12022, subd. (b)(1)). The trial court sentenced defendant to six years in state prison.

---

[1] Undesignated statutory references are to the Penal Code.

On appeal, defendant contends the trial court erred by (1) allowing the jury to conduct an experiment during deliberations, and (2) allowing the jury to reenact the stabbing of the victim without allowing defendant to be personally present during that stage of the proceedings.

We deem defendant's first contention regarding the jury's experiment to be forfeited for lack of objection in the trial court. With regard to defendant's second contention, we conclude that a defendant has no right to invade a jury's deliberations by being personally present during an attempt to reenact the events described by witness testimony. After requesting briefing from the parties on the issue of defendant's entitlement to presentence custody credits amounting to almost 50 percent of his actual days in custody, we conclude that the abstract of judgment errs in listing the number of presentence conduct credits. Accordingly, we affirm defendant's conviction but order the correction of the abstract of judgment.

## FACTUAL BACKGROUND

### Prosecution Evidence

Late in the evening on October 10, 2009, defendant was cooking dinner with his girlfriend, Ameresh Singh.[2] When they were finished cooking, Ameresh took a shower. Returning from the bathroom, Ameresh entered the kitchen where she saw defendant using a knife to chop cabbage, lettuce, and tomatoes for a salad. Ameresh twice asked him, "Shall we start with dinner?" Defendant responded neither time. When she turned around to find out why he was not responding to her questions, she saw defendant about to fall. At the time, chronic pains in his legs required defendant to use crutches for walking.

Before defendant fell, Ameresh rushed over to grab him. She held him in a "bear hug" to keep him up. Ameresh then "sensed" something wet. She turned to see her reflection in a window and saw that she had blood on her T-shirt and a wound on her neck.

Ameresh grabbed her car keys. Defendant told her, "Let me take you to the hospital." Ameresh responded, "No. You stay here. I'll go." Defendant walked with her to the car where he announced, "I'm going to hang myself."

Ameresh drove to the house of Minesh Kumar, who had been her friend at work before she quit her job to take care of defendant. While driving, Ameresh noticed that her arm was hurting. When she looked, she saw that her arm was bleeding.

---

[2] For the sake of convenience and to avoid confusion, we refer to Ameresh Singh by her first name. Although defendant referred to the victim as his wife, Ameresh testified that they were not married. Their shared surname is coincidental.

There was no answer when Ameresh knocked on Kumar's door. She let herself in and called out to him. Kumar went over to her and asked, "Who did this?" Ameresh named defendant and said that someone should be sent to help defendant because he was going to hang himself. Kumar called 911 and reported, "I think her boyfriend cut her throat." When a police officer arrived at Kumar's house, he reported that defendant was going to hang himself.

Police officers were dispatched to defendant's house to check on him. The officers found blood inside and outside the house—leading from the kitchen, past the outside steps, and to the street. When defendant was asked about blood on his shirt, he responded "that he was okay." One of the officers asked, "Well, what is that, then?" And, defendant "said that it was his wife's blood." Defendant also explained that "things weren't going very well between him and his wife" because "she was dating another man." Earlier that evening, Ameresh "had gone to the kitchen to get food and stated that she was getting food to take to her other boyfriend." Defendant told the police that "[h]e told her he wasn't okay with that." Defendant also "said something" to the officers "about being angry."

Defendant told the officers that Ameresh had picked up a knife and came at him with it. Defendant then "grabbed a hold of her and struggled with her over the knife." Defendant stated that he was able to grab the knife but did not know how Ameresh's throat got cut. Defendant described her injury as an accident but could not explain why he did not call anyone to help her.

Defendant told another officer at the scene, "No, it's my wife's blood. She was swinging a knife at me. I took it from her and I cut her throat." Defendant "initially had thought about killing himself and then decided not to."

Ameresh's treating physician testified that the victim received "a very large laceration across her neck" in addition to "two lacerations to her shoulder." The laceration on the neck was a "big gaping open wound" approximately six centimeters in length. Her physician initially examined the wound, concerned that it had the potential to be lethal. The physician testified that Ameresh "stated that her boyfriend stabbed her" with a knife. Ameresh also stated that defendant twice stabbed her shoulder and hit her on the right cheek. However, she added that she did not want the police to be called.

At trial, Ameresh denied that defendant attacked her. Her denials were contradicted by a victim advocate, who spoke with Ameresh on October 14, 2009. The victim advocate testified that Ameresh stated, "she went to the kitchen sink to wash her hands and the defendant came up from behind her" and then "cut her on her neck, from the left side of her neck." Ameresh said that defendant cut her "[f]rom the left to the center." She looked down to see

"blood rushing down." Ameresh said, "she was afraid she was going to die because she was bleeding profusely." She stated, "[s]he was also afraid that defendant would get arrested for that."

### Defense Evidence

Defendant testified on his own behalf, explaining that he and Ameresh were making chicken curry for a late dinner on October 10, 2009. Ameresh cooked the chicken and made tortillas. When dinner was ready, defendant went to the kitchen table to make a salad as Ameresh had instructed. Ameresh came into the kitchen while defendant was standing at the table. Defendant turned around to reach for a bowl from a nearby cabinet. When he tried to move his chair to reach one of his crutches, the chair slipped and he began to lose balance. Defendant called out to Ameresh and tried to grab onto her shoulder. Defendant remembered her holding him tightly. He then saw her throat was cut open, and he said to her, "You got hurt from the knife."

Defendant grabbed his crutches and walked outside with Ameresh following him. Defendant said they had to go to the hospital. Ameresh replied that she was going to the hospital on her own, and defendant responded, "[I]f something [is] going to happen to you, then I'll hang myself." Defendant went back inside, sat down, and drank a can of beer.

At trial, defendant denied telling the police that "things were not good" between Ameresh and him. Defendant also denied telling the officers that Ameresh came at him with a knife and that they had struggled. Instead, defendant testified he told the officers that her injuries had been accidental.

Defendant acknowledged Ameresh's friendship with Kumar, but testified that he was not upset about her visits to Kumar's house. Defendant encouraged her to use Kumar's computer to gain the skills necessary to secure a better job.

Defendant admitted that Ameresh had come to visit him in jail approximately twice a week and that they had spoken about the case "a little."

## DISCUSSION

### I

### *Experimentation by the Jury*[*]

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

[*]See footnote, *ante*, page 366.

## II

*Defendant's Right to be Personally Present During Critical
Stages of the Proceedings*

Defendant argues that, even if the jury had the prerogative to reenact the stabbing, he had a constitutional right to be personally present during the jury's attempt to replicate the events leading to Ameresh's injuries. We disagree.

■ Under the Sixth Amendment, criminal defendants have the right to be personally present during critical stages of the proceedings against them. (*People v. Santos* (2007) 147 Cal.App.4th 965, 972 [55 Cal.Rptr.3d 1] (*Santos*).) However, " 'a criminal defendant does not have a right to be personally present at a particular proceeding unless his appearance is necessary to prevent "interference with [his] opportunity for effective cross-examination." [Citations.] [¶] Similarly, under the Fourteenth Amendment's due process clause, a criminal defendant does not have a right to be personally present at a particular proceeding unless he finds himself at a "stage . . . that is critical to [the] outcome" and "his presence would contribute to the fairness of the procedure." [Citation.]' (*People v. Waidla* [(2000)] 22 Cal.4th [690,] 741–742 [94 Cal.Rptr.2d 396, 996 P.2d 46].)" (*Santos, supra,* at pp. 972–973.)

■ Although jury deliberations are a critically important part of the trial of a defendant, a defendant's right to be present has been greatly limited by the courts. The California Supreme Court has held that rereading of testimony to the jury does not constitute a stage of the proceeding for which a criminal defendant has a constitutional right to be present. (*People v. Avila* (2006) 38 Cal.4th 491, 598 [43 Cal.Rptr.3d 1, 133 P.3d 1076].) So too, the Sixth Amendment does not require that the defendant be present during the jury's viewing of a crime scene. (*People v. Moon* (2005) 37 Cal.4th 1, 20 [32 Cal.Rptr.3d 894, 117 P.3d 591].) And, in *Santos*, the Court of Appeal held that allowing a jury to depart by a private exit did not violate a defendant's right to be personally present. (*Santos, supra,* 147 Cal.App.4th at pp. 972–974.) ■ In harmony with this authority, we conclude that a criminal defendant does not have a Sixth Amendment right to be personally present during jury deliberations even when the deliberations include reenactment of the circumstance described by testimony at trial.

■ A jury's use of an exhibit admitted into evidence to reenact the events described by testimony constitutes a legitimate part of deliberations. (*People v. Cumpian* (1991) 1 Cal.App.4th 307, 310, 315 [1 Cal.Rptr.2d 861] [rejecting claim of jury misconduct after jurors tried on a duffel bag to see whether its fit and shape supported the defendant's contention that he did not intend to commit robbery by swinging the bag at the security guard of the store from which he stole it].) Manipulation of an exhibit in evidence does not constitute receipt of new evidence such that a defendant has a right to be personally present during its reception. (See *id.* at p. 315 [holding that "jury's use of the exhibit did not invade *new fields* nor did their experiment with the duffel bag involve matters not within the scope and purview of the evidence"].)

■ A defendant has no right to intrude on jury deliberations simply to observe. As our high court has noted, "California courts have recognized the need to protect the sanctity of jury deliberations. (*People v. McIntyre* (1990) 222 Cal.App.3d 229, 232, fn. 1 [271 Cal.Rptr. 467] ['The secrecy of jury deliberations should be closely guarded']; *People v. Talkington* (1935) 8 Cal.App.2d 75, 85–86 [47 P.2d 368] [recognizing 'the secrecy that should surround the deliberations of the jury'], disapproved on another ground in *People v. Friend* (1958) 50 Cal.2d 570, 578 [327 P.2d 97].) . . . [S]ection 167 makes it a misdemeanor to eavesdrop upon or record jury deliberations without the jury's consent." (*People v. Cleveland* (2001) 25 Cal.4th 466, 475 [106 Cal.Rptr.2d 313, 21 P.3d 1225], fn. omitted.) Thus, trial courts are charged with keeping juries "free from outside attempts at intimidation." (*Williams v. Florida* (1970) 399 U.S. 78, 100 [26 L.Ed.2d 446, 90 S.Ct. 1893].)

■ Defendant was not denied his Sixth Amendment right to be personally present during a critical stage of the proceedings on grounds that he was not allowed to observe the jury's deliberations.

## III

*Presentence Custody Credits*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante*, page 366.

## DISPOSITION

The judgment is affirmed. The superior court clerk is to prepare a corrected abstract of judgment reflecting that defendant is entitled to a total of 43 days of presentence custody credits, and to forward a certified copy to the Department of Corrections and Rehabilitation.

Nicholson, Acting P. J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 22, 2012, S203750.