Filed 12/10/13  P. v. Romero CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B244146 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA090510) |
| v. | |
| YASKI RAMIREZ ROMERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tomson T. Ong, Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney Genral, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Yaski Ramirez Romero appeals from a judgment following his convictions for sex crimes against a minor. He contends the trial court erred in admitting the Spanish-language portion of an audio-recorded police interview without instructing the jury that the English translation is the evidence of what was said. He further contends that the court failed to make the proper findings before imposing consecutive sentences. Finding no reversible error, we affirm.

# PROCEDURAL HISTORY

An amended information charged appellant with three counts of aggravated sexual assault of a child (Pen. Code, § 269, subd. (a); counts one, three, and seven),[1] one count of continuous sexual abuse (§ 288.5, subd. (a); count two), one count of sexual penetration by a foreign object (§ 289, subd. (j); count four), one count of aggravated sexual assault (sodomy) of a child (§ 269, subd. (a)(3); count five), one count of aggravated sexual assault (oral copulation) of a child (§ 269, subd. (a)(4); count six), and one count of sending harmful matter to a minor (§ 288.2, subd. (a); count eight). On September 4, 2012, a jury found appellant guilty as charged.

On September 20, 2012, appellant was sentenced to 102 years in state prison, calculated as follows: five consecutive indeterminate terms of 15 years to life as to counts one (base count), three, five, six, and seven, plus consecutive determinate terms of 16 years (count two), eight years (count four), and three years (count eight). He received 324 days of presentence custody credit.

Appellant timely appealed.

---

[1]  Undesignated statutes are to the Penal Code.

# FACTUAL BACKGROUND

A.     Prosecution Case

The victim, R. R. (the daughter), testified at trial.  The daughter is appellant's biological daughter.  When the daughter was five or six years old, appellant began to touch her breast area "almost every single Monday" night, when her mother and brothers were absent.  Appellant also touched her vagina.  When the daughter told appellant that she did not want to have sex with him, he would hit her.

When the daughter was around seven or eight years old, appellant began having vaginal intercourse with her.  Although the daughter told appellant to stop, he refused.  During these incidents, appellant would take the daughter to the bedroom, show her pornography on his computer and iPod, take off his clothes, force her to take off her clothes, and insert his penis into her vagina.  The daughter would try to get away, but appellant held her down with his body.  After "moving his body inside her," appellant would withdraw his penis and ejaculate into his hands.  When the daughter was nine years old, the sexual assaults would occur about four times per month.  The frequency of the assaults was halved when her grandfather began living with the family.  When her grandfather left for Mexico, appellant resumed sexually assaulting her every Monday.

The daughter also testified about specific sexual assaults.  During one of appellant's sexual assaults, he took nail polish remover or alcohol and put it in front of her face so "[she] couldn't feel the pain" during intercourse.  On another occasion, appellant covered the daughter's mouth with his hand.  On a third occasion, appellant did not want to have sex, but he forced the daughter to suck his penis.  On another occasion, appellant used a pink-colored vibrator to penetrate her

3

vagina. Although the vibrator penetrated "a little bit," the daughter did not "let" him use it further. Appellant then "just had sex with [her]."

The daughter testified about three sexual assaults that occurred when she was around 12 years old. During the first incident, appellant took the daughter to a hotel to have sex with her. He gave her an alcoholic beverage and told her to drink it. The alcohol made her "dizzy." Appellant then showed her pornography, and inserted his penis into her vagina and mouth. The daughter told appellant to stop, but he refused. During the second incident at a "nicer" hotel, appellant sexually assaulted her on the floor. The daughter told him to stop, but he inserted his penis into her vagina. During one of the assaults at the hotel, appellant also had anal intercourse with her. The daughter "felt pain" and screamed. With respect to the third incident, appellant took the daughter to a construction site where he worked, and sexually assaulted her in a laundry room onsite.

The last sexual incident between appellant and the daughter occurred on October 24, 2011. It occurred in her bedroom. Appellant showed her some pornography before raping her.

The daughter never told her mother about the sexual abuse because she was afraid that appellant would leave the family. On November 1, 2011, after appellant hit her, she became mad and told her mother about the abuse. The following day, the daughter went with her mother, her aunt and a cousin to the police station to report the abuse. She spoke with City of Long Beach Police Officer Claudia Lopez. Later, she spoke with Detective Dawn Callinske, who was assigned as the investigating officer to the case.

After interviewing the daughter, Officer Lopez sent two units to detain appellant at his residence. Officer Lopez then went to speak with appellant. After waiving his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436), appellant

4

told Officer Lopez that he had been "touching his daughter" since "she was like seven, eight years old." Appellant stated that the incidents occurred when "[n]o one else was around." He knew it was wrong but "he had an urge because when he was a child, he had been molested himself."

Appellant also stated that "he had had sex with her." The incidents occurred in the bedroom and on Mondays. At first, appellant used a condom because, "he was her father, after all, he had to do the responsible thing and not get her pregnant, but then he stopped using a condom." Later, he "ejaculated in his hand and then he would get a napkin, wipe it down and flush it down the toilet."

Appellant also told Officer Lopez that he had the daughter orally copulate him "because his wife used to give him oral copulation and since she stopped doing that, he decided to try it with her." Appellant admitted showing her pornography, but stated that "he thought that she enjoyed watching it." He also admitted taking her to two different work locations and two different motels to have sex with her. He also gave her a wine cooler to drink.

The next day, appellant was interviewed at the police station by Detectives Callinske and Mark Steenhausen. The interview was conducted in both English and Spanish, and the audio-recording of the interview was played for the jury.

In the English-language portion of the interview, appellant admitted he began touching appellant when she was six or seven. He had sex with the daughter when she was between 11 to 12 years old. He described their positioning during vaginal sex and oral sex. Appellant attempted to have anal sex with the daughter once, but stopped when she said it hurt. After stopping, he had vaginal sex with her.

5

Appellant admitted taking the daughter to two hotels where he had vaginal sex with her. He also admitted to watching pornography with her, and to giving her a strawberry wine cooler one time.

During the interview, appellant stated that he wanted to write an apology letter to the daughter. After being provided paper, appellant wrote: "[Daughter], please forgive me and I want to say to you that what you did is okay. It is finished, this, what we were doing. And I ask you to forgive me. God bless you guys. Take care a lot."

In the Spanish-language portion of the interview, appellant stated that he started touching his daughter when she was around seven years old. He stated that when he touched his daughter, he remembered when he had been sexually abused as a child. He started having sex with his daughter when she was 12 years old, once a week, usually on Mondays. Appellant admitted that he had her orally copulate him once.

B.     Defense Case

Detective Callinske testified that a search of appellant's iPod revealed no incriminating photographs or videos. On November 4, 2011, Detective Callinske had the daughter taken to a hospital for a sexual assault exam. Nurse practitioner Malinda Wheeler testified that her examination of the daughter revealed no external fresh injuries or healed injuries. Wheeler could "neither confirm nor negate" the daughter's claim of sexual assault.

## DISCUSSION

Appellant contends his convictions should be reversed because the trial court erroneously informed the jury that the Spanish-language portion of his police interview was the "evidence." Appellant also contends the trial court failed to

6

make the specific findings required to sentence him to consecutive indeterminate and determinate terms.  We disagree.

A.    Audio-Recording of Police Interview

Before the audio-recording of appellant's interview at the police station was played for the jury, the trial court informed the jury as follows:

> "Ladies and gentlemen, in a few minutes we're going to be playing a CD of an interview.  The evidence is not the transcript that you're being passed around, it is the CD.  If there is a discrepancy between the contents of the CD and the transcript, it is the CD that is evidence.  At the conclusion of the playing of the CD, we'll take back the transcripts away from you; you will not have that in the jury room.  If you decide to play the CD again, you call us, we will bring back the CD with the player and give you back the transcripts so we simulate the same process as we have had in the courtroom."

Later, after the prosecution rested and outside the presence of the jury, the trial court discussed the various prosecution exhibits with the prosecutor and defense counsel.  The court stated that the English translation of the audio-recorded police interview would not be sent into the jury room "unless requested by the jury."  The prosecutor stated:  "Well, I generally agree with that but in this case[,] we have a certified translation, so my argument would be that the evidence would be the transcript.  But I'll submit."  Defense counsel did not want the jury to have access to the translation unless the jury wanted to rehear the CD, in which case, "it should be done in the courtroom."  The record does not show that the jury asked to rehear the audio-recording.  Finally, before deliberations, the jury was instructed that "[w]hen a witness has testified through a certified court interpreter, you must accept the English interpretation of that testimony even if you would have translated the foreign language differently."

Appellant contends the trial court's instructions to the jury about the audio-recording were erroneous.  He further contends that the error was reversible per se.

7

We conclude that there was error, that the error was subject to harmless error analysis, and that appellant has failed to show prejudice.[2]

Generally, a recording of a statement or conversation in English constitutes the evidence of what was said. (*People v. Brown* (1990) 225 Cal.App.3d 585, 597-599.) If a transcript is provided that conflicts with the recording, the recording generally controls. (*Ibid*.) Where a recording is in a language other than English however, the English translation controls (*People v. Cabrera* (1991) 230 Cal.App.3d 300, 304 (*Cabrera*).) Here, the audio-recording of appellant's police interview was in both English and Spanish. Given the dearth of case authority on mixed language recordings, the trial court understandably provided instructions that were standard for audio-recordings in English. The instructions, however, were incomplete. The trial court should have instructed the jury that the English-language portion of the audio-recording and the certified English translation of the Spanish-language portion of the interview constituted evidence of what was said during the interview.

Appellant contends the trial court's error (in instructing the jury that the CD was the "evidence") was structural error that requires his convictions to be reversed without appellant having to show prejudice. We disagree.

In *Arizona v. Fulminante* (1991) 499 U.S. 279 (*Fulminante*), the United States Supreme Court distinguished between constitutional violations that were

---

[2]     Appellant concedes that his trial counsel did not object to the trial court's instructions on the audio-recording, but argues that he did not forfeit his claim of error, as the failure to object constituted ineffective assistance of counsel. We need not address appellant's claim of ineffective assistance of counsel, as we reject the underlying claim on its merits. Accordingly, appellant cannot show he was prejudiced by an alleged ineffective assistance of counsel. (*People v. Holt* (1997) 15 Cal.4th 619, 703 [defendant not entitled to relief on claim of ineffective assistance of counsel where he made insufficient showing as to prejudice].)

8

subject to the harmless-error test -- trial errors -- and constitutional violations not subject to the harmless-error test -- structural errors. The latter are "structural defect[s] affecting the framework within which the trial proceeds." (*Id*. at p. 310.) Structural errors include total deprivation of the right of counsel at trial, a biased judge, unlawful exclusion of members of the defendant's race from a jury, denial of the right to self-representation at trial, and denial of the right to a public trial. (*Ibid*.)

On the other hand, trial errors are errors in the trial process. They include erroneous jury instructions, erroneous exclusion or admission of evidence, and restriction on the right to cross-examine a witness. (*Fulminante*, *supra*, 499 U.S. at pp. 306-307.) Indeed, the erroneous admission of a coerced confession is not structural error, but rather, it is a trial error subject to the harmless beyond a reasonable doubt test under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*Fulminante*, *supra*, at pp. 310-311 [under federal constitutional law]; *People v. Cahill* (1993) 5 Cal.4th 478, 509-510 [under California law].) Here, the jury was incorrectly instructed about the admissibility of a piece of evidence. That error is an error in the trial process, not a structural defect affecting the framework within which the trial proceeded.

*People v. Gamache* (2010) 48 Cal.4th 347 (*Gamache*) and *Eslaminia v. White* (9th Cir. 1998) 136 F.3d 1234 (*Eslaminia*) are instructive. In *Eslaminia*, the jury was provided an audio tape of a police interview of the defendant. Unknown to the trial court, the prosecutor or defense counsel, the reverse side of the tape contained a police interview of defendant's brother. That interview was never admitted into evidence, and the brother never testified at trial. The jury listened to that interview during its deliberations. (*Id*. at pp. 1236-1237.) The Ninth Circuit rejected the argument that the jury's consideration of the brother's taped interview

9

was structural error. (*Id*. at p. 1237, fn. 1.) Likewise, in *Gamache*, *supra*, at page 395, during deliberations, the jury had viewed a videotape not admitted into evidence. The California Supreme Court determined that the error was trial error, not structural error. (*Id*. at p. 396.) The error here is much less egregious. The audio-recording of the police interview was played once in open court. The jury was provided with a transcript of the audio-recording to follow along. The transcript contained a transcription of the English-language portion of the audio-recording and a certified English translation of the Spanish-language portion. No one disputes the accuracy of the English translation. The jury was told that if it wished to rehear the audio-recording, the recording would be played in the courtroom and the same transcript would be provided to the jury. The jury made no such request. Under these circumstances, the court's error in instructing the jury that "the evidence is not the transcript . . . , it is the CD" was a trial error subject to harmless-error analysis.[3]

---

[3] Appellant's reliance on *People v. Arancibia* (2013) 213 Cal.App.4th 1465 is misplaced, as it was ordered depublished by the California Supreme Court (see *People v. Arancibia* (Feb. 27, 2013) B240341, opn. ordered nonpub. June 12, 2013.) In addition, appellant's other cited cases are distinguishable, as they involved juror misconduct, not trial court error. (See, e.g., *Cabrera*, *supra*, 230 Cal.App.3d at pp. 303-304 [misconduct for juror to rely on own translation instead of interpreter's translation]; *People v. Cumpian* (1991) 1 Cal.App.4th 307, 312-313 (*Cumpian*) [jurors cannot conduct experiments on their own].) As explained by the California Supreme Court, a jury's consideration of evidence inadvertently admitted or provided by the trial court is ordinary error, not juror misconduct. (*Gamache*, *supra*, 48 Cal.4th at pp. 397-398.) Moreover, in *Cabrera*, the appellate court affirmed the judgment of conviction, after determining that the defendant could not show prejudice resulting from the juror misconduct. (*Cabrera*, at pp. 306-307.) In *Cumpian*, *supra*, 1 Cal.App.4th at page 317, the appellate court found no juror misconduct, as it determined that the jury's experiment was based on evidence received in court.

Applying the harmless-error test, we conclude that the error in advising the jury that the CD was the evidence was harmless beyond a reasonable doubt. First, there is no evidence -- and no reason to speculate -- that any juror was misled by the trial court's instructions into relying upon any interpretation of the Spanish-language portion of the audio-recording other than the certified English translation. There is no evidence that any juror knew Spanish, that any juror provided his or her own translation of the Spanish-language portion of the audio-recording to other jurors, or that any juror disregarded the certified translation. We note that the jury was instructed that when testimony was presented through an interpreter, "you must accept the English interpretation of that testimony even if you would have translated the foreign language differently." In light of this instruction and the fact that the jury was provided with the certified English translation on the sole occasion when the audio-recording was played, we find no reasonable possibility that the trial court's incomplete instructions regarding what constituted "evidence" affected the verdict. (See *Gamache*, *supra*, 48 Cal.App.4th at p. 399, fn. 22 [error that has no reasonable possibility of affecting verdict is harmless under *Chapman*].)

Second, the incriminating statements in the Spanish-language portion of the interview are duplicative of the incriminating statements in the English portion of the interview. In Spanish, appellant stated that he started touching the daughter when she was about seven years old, that he had sex with her when she was 12 years old, and that he had made her orally copulate him once. Appellant made these same admissions in English during the interview. As to the other Spanish-language statements -- that appellant was abused when he was a child and that he raped the daughter once a week, usually on Mondays -- those statements were duplicative of his statements to Officer Lopez. Accordingly, the trial court's error

11

in instructing the jury that the CD was the "evidence" was harmless beyond a reasonable doubt. (See, e.g., *Gamache*, *supra*, 48 Cal.4th at pp. 399-400 [erroneous consideration of videotape not admitted into evidence was harmless under *Chapman* where videotape was duplicative of other videotaped evidence].)

B.    Sentencing Issues

Appellant contends the matter must be remanded for resentencing, as the trial court did not state with sufficient clarity that the crimes in counts one, three, five, six and seven involved the same victim on separate occasions, as required by section 269, subdivision (c). We review the trial court's decision to impose consecutive sentences for an abuse of discretion. (*People v. Scott* (1994) 9 Cal.4th 331, 349 (*Scott*).)

As an initial matter, we conclude that appellant has forfeited this issue. As appellant concedes, defense counsel failed to object to the trial court's sentencing calculation. Accordingly, this issue has been forfeited. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751; *Scott*, *supra*, 9 Cal.4th at p. 353.) Nevertheless, as appellant raises a claim of ineffective assistance of counsel for failure to object to the sentencing, we address the issue on the merits.

Section 269, subdivision (c) requires consecutive sentences "for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions." Appellant was convicted of three counts of aggravated sexual assault of a child (counts one, three, and seven), one count of aggravated sexual assault (sodomy) of a child (count five), and one count of aggravated sexual assault (oral copulation) of a child (count six). During sentencing, the trial court stated that a "consecutive sentence is warranted in this case because by law you have a mandatory consecutive sentence. Moreover, a lot of these incidents happened on different dates and so there are

12

different occurrences." These statements sufficiently indicated that the trial court had found the crimes involved the same victim on separate occasions.

Moreover, the trial court's finding was supported by substantial evidence in the record. The daughter testified to at least three different incidents of sexual assault inside the family residence, two different incidents at two motels, and one incident of a sexual assault at appellant's workplace. During one of the hotel incidents, appellant committed sodomy. Appellant also forced her to orally copulate him during one of the hotel incidents and on another unspecified occasion. Accordingly, the trial court did not abuse its discretion in imposing consecutive terms on counts one, three, five, six, and seven.[4]

Appellant next contends that the trial court abused its discretion by "fail[ing] to set forth the criteria necessary to support the imposition of consecutive terms as to counts 4 and 8," and that "defense counsel was ineffective for failing to object." Because defense counsel failed to object, the claim was forfeited. Even were we to find no forfeiture, the claim lacks merit.

Section 669 provides for concurrent or consecutive sentencing "[w]hen a person is convicted of two or more crimes." "A trial court must expressly state reasons for its decision to impose consecutive prison terms." (*People v. Tillotson* (2007) 157 Cal.App.4th 517, 545.) "The California Rules of Court set forth the criteria affecting the decision to impose consecutive rather than concurrent sentences." (*People v. Davis* (1995) 10 Cal.4th 463, 552 (*Davis*).) One criterion is

---

[4]     We reject appellant's claim of ineffective assistance of counsel as there was no prejudice. It would have been futile for defense counsel to object to the sentencing in light of the substantial evidence supporting the trial court's finding that the crimes occurred on separate occasions. (See *People v. Solomon* (2010) 49 Cal.4th 792, 843, fn. 24 ["The Sixth Amendment does not require counsel to raise futile motions."].)

whether "[t]he crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior:" (Cal. Rules of Court, rule 4.425(a)(3).) Another criterion is any circumstance in aggravation or mitigation. (Cal. Rules of Court, rule 4.425(b).) Only one aggravating circumstance is necessary to support a consecutive sentence. (*Davis*, *supra*, 10 Cal.4th at p. 552.) However, while a court may rely on an aggravating circumstance to impose consecutive prison terms, it cannot rely on the same aggravating circumstance to also impose an upper term. (*Scott*, *supra*, 9 Cal.4th at p. 350, fn. 12; see also Cal. Rules of Court, rule 4.425(b)(1).) "The trial court's failure to state reasons for imposing consecutive sentences is reviewed for harmless error." (*People v. Tillotson*, *supra*, 157 Cal.App.4th at p. 545.)

Here, among other counts, appellant was convicted of sexual penetration by a foreign object (count 4) and sending harmful matter to a minor (count 8). In the sentencing memorandum and at the sentencing hearing, the prosecutor argued that appellant should be sentenced to "full, separate and consecutive term[s]." The prosecutor noted that the crimes "involved the same victim but on a number of different occasions over a span of two years." The prosecutor also argued that the upper term was warranted because of various aggravating factors, including: (1) the repeated and violent nature of the attacks, (2) the particular vulnerability of the victim, (3) the manner in which the crimes were carried out, (4) the fact that appellant took advantage of a position of trust in committing the offense, and (5) the fact that appellant's violent conduct indicated a serious danger to society.

As discussed previously, the trial court found that consecutive sentencing was warranted because "a lot of these incidents happened on different dates and so there are different occurrences." The court then found "the upper term or the

14

maximum term as allowed by law is warranted in this case because of the vulnerability of the child, the trust that has been breached from a father to a daughter and the breach of trust [resulted] in a very heinous criminal conduct and that is the sexual assault of your own daughter, anywhere from the age I would say eight, as best as we could gather, seven or eight years old all the way to the age of 13." The court sentenced appellant to the upper term on counts 4 and 8, and imposed both terms consecutively.

On this record, there was no error. A consecutive sentence may be imposed if the crimes were committed at different times or separate places. (*Davis*, *supra*, 10 Cal.4th at p. 552.) The trial court found that counts 4 (penetration by a foreign object) and 8 (sending harmful matter to a minor) happened on different dates and occurred at separate locations. There is substantial evidence to support this finding. The daughter testified that appellant used a pink-colored vibrator to penetrate her vagina during one sexual incident, and that he showed her pornography on numerous occasions, including at a hotel and in a bedroom at the family residence.

Moreover, any error was harmless. The court found several factors in aggravation including the vulnerability of the child, the breach of trust, and heinous criminal conduct occurring over a lengthy period of time. Any one factor could be used to support an upper term and the remaining factors could be used to support consecutive sentencing. Thus, "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of error." (*Davis*, *supra*, 10 Cal.4th at p. 552.) In short, the trial court did not commit reversible error in sentencing appellant to consecutive terms on the various counts of sex crimes.

15

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

MANELLA, J.

We concur:

EPSTEIN, P. J.

SUZUKAWA, J.

16