[No. B187213. Second Dist., Div. Five. Feb. 20, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
PATRICK JAMES SANTOS, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

## COUNSEL

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KRIEGLER, J.**—After reaching a verdict in a robbery-murder prosecution involving criminal street gang and firearm use allegations, the jury informed the court clerk of its desire to leave the courtroom without speaking to anyone. The trial court accommodated the jury's request once the verdict was read and recorded, allowing the jury to exit through a private corridor, leaving the jurors unavailable to speak to the parties. The defense was not made aware of the jury's request before the jury departed.

In this timely appeal, defendant and appellant Patrick James Santos, Jr.,[1] makes the following arguments: (1) he and defense counsel were absent at a

---

[1] Codefendants Antoine Klines, Charles Edwards, and Ron Whittenburg are not parties to this appeal. Defendant was tried separately.

critical stage of the proceedings when the trial court arranged for the jury to secretly leave the building after the verdict was rendered, violating his constitutional right to due process of law; (2) Code of Civil Procedure section 237,[2] as applied in this action, violates substantive due process by depriving defendant of an impartial jury; and (3) imposition of the $20 security fee violates the prohibition against ex post facto application of laws and the rule presuming that statutes operate prospectively.

We reject defendant's due process claim based on his absence at a critical stage of the proceedings because the issue was not raised in the trial court, the decision to allow the jury to leave through a nonpublic exit was not a critical stage of the proceedings, and any error in connection with the decision was nonprejudicial. The substantive due process claim fails because there is no historical right to question jurors regarding their verdict and there is no hint of jury misconduct in the record. In the unpublished portion of this opinion, we reject defendant's challenge to the imposition of the $20 security fee. We affirm the judgment.

## PROCEDURAL HISTORY

Defendant was convicted by jury of the first degree murder of Enrique Ruiz Olvera, in violation of Penal Code section 187, subdivision (a). The jury found true firearm use allegations pursuant to Penal Code section 12022.53, subdivisions (b)–(d) and also found the murder was committed for the benefit of a criminal street gang, within the meaning of Penal Code section 186.22, subdivision (b)(1). Defendant was sentenced to state prison for 25 years to life for murder, plus an additional 25 years to life for the use of a firearm.

## FACTS

Because there is no issue concerning the sufficiency of the evidence, a brief factual summary is sufficient for purposes of appeal. Olvera, working as a security guard at the El Dorado Swap Meet, died from a gunshot received during a robbery of a jewelry store. The robbery was planned and committed by members of "66," a subset of East Coast Crips. Defendant, a "66" member, confessed to his role in the robbery and identified the other participating gang members. Expert testimony was presented to establish that the robbery and murder were committed for the benefit of a criminal street gang.

---

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

## DISCUSSION

## I

## DEFENDANT WAS NOT DENIED THE RIGHT TO BE PRESENT AT A CRITICAL STAGE OF THE PROCEEDINGS

Defendant makes three related contentions arising from the jury's request, honored by the trial court, to allow the jurors to exit the courtroom through a private passage rather than through the public corridor. First, defendant argues the decision to allow the jury to depart through a private exit was a critical stage of the proceedings and the exclusion of defendant and counsel from that process was reversible error. Second, defendant argues his constitutional right to due process and a jury trial were violated since he was deprived of a fair opportunity to investigate jury misconduct. Defendant's third argument is that application of section 237, subdivision (d), was unconstitutional as applied in this case.

### A. *Background*

After the jury indicated it had reached verdicts by pressing the jury room buzzer three times, the jurors as a group advised the clerk they wanted to leave the courtroom without having to talk to anyone. The clerk did not ask the jury any questions. The jurors asked the clerk if they were required to talk to anyone and wanted to know if they could leave by "a different way." The jury's request to the clerk "was a group decision." After the jury returned its verdicts, the trial court instructed the jurors pursuant to CALJIC No. 17.60 that the admonition not to discuss the case was no longer in effect and they could either discuss or not discuss the case with the parties. The jurors were allowed to leave the courtroom through a private exit, because the trial court "wanted to respect their request." Defense counsel did not have notice of the jury's request or the court's approval.

Defense counsel filed a petition pursuant to section 237 to unseal the jurors' confidential identifying information. In a supporting declaration, defense counsel stated it was "unclear" whether juror misconduct occurred, and it was impossible to determine the existence of misconduct without the opportunity to inquire of the jurors. At the hearing on the motion, defense counsel conceded he had no good cause to establish juror misconduct, but argued he was entitled to the jurors' identities in order to investigate if misconduct had taken place because he never had the opportunity to attempt

to speak to the jurors after the verdict. The trial court denied the petition, ruling that the jurors had the right not to speak to anyone about the case, including the right to avoid contact with attorneys and investigators once their jury service was complete. The trial court rejected the argument that the defense had the right to ask the jurors to speak, even if the request was rejected. Because there was no basis for a suspicion of misconduct in the case, the petition to unseal the juror records was denied.

## B. *Absence at a Critical Stage of the Proceedings*

Defendant argues he was denied his constitutional right to be present at a critical stage of a criminal proceeding. He also argues the error is structural and not subject to harmless error analysis. The argument fails for three distinct reasons.

■ First, defendant did not raise this objection in the trial court. Although defense counsel did file a petition to unseal the confidential juror identifying information, at no time did counsel articulate the argument that the defense was absent during a critical stage of the proceedings. "[B]ecause he failed to raise an objection on this ground at trial," the issue is forfeited on appeal. (*People v. Moon* (2005) 37 Cal.4th 1, 21 [32 Cal.Rptr.3d 894, 117 P.3d 591].)

Second, assuming a specific objection had been made, the jury's request to leave through a private exit and the trial court's approval did not constitute a critical stage of the proceedings. We review the issue de novo. (*People v. Perry* (2006) 38 Cal.4th 302, 311–312 [42 Cal.Rptr.3d 30, 132 P.3d 235]; *People v. Waidla* (2000) 22 Cal.4th 690, 741 [94 Cal.Rptr.2d 396, 996 P.2d 46].)

■ "The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all 'critical stages' of the criminal process. [Citations.]" (*Iowa v. Tovar* (2004) 541 U.S. 77, 87 [158 L.Ed.2d 209, 124 S.Ct. 1379].) "We assume in aid of the petitioner that in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." (*Snyder v. Massachusetts* (1934) 291 U.S. 97, 105–106 [78 L.Ed. 674, 54 S.Ct. 330].) "Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow. What has been said, if not decided, is distinctly to the contrary. [Citations.]" (*Id.* at pp. 106–107.) "Under the Sixth Amendment's confrontation clause, a crimi-

nal defendant does not have a right to be personally present at a particular proceeding unless his appearance is necessary to prevent 'interference with [his] opportunity for effective cross-examination.' [Citations.] [¶] Similarly, under the Fourteenth Amendment's due process clause, a criminal defendant does not have a right to be personally present at a particular proceeding unless he finds himself at a 'stage . . . that is critical to [the] outcome' and 'his presence would contribute to the fairness of the procedure.' [Citation.]" (*People v. Waidla, supra,* 22 Cal.4th at pp. 741–742.)

██ Defendant does not argue that the decision to allow the jury to leave in any way implicated defendant's right to effective cross-examination under the Sixth Amendment, relying instead on a due process contention. The due process clause does not require the jury to be exposed to a defendant or the defendant's attorney, family, or acquaintances after a verdict had been duly rendered and the jury discharged. Moreover, defendant does not identify how his presence, or that of his counsel, would have had a reasonably substantial relation "to the fullness of his opportunity to defend against the charge." (*Snyder v. Massachusetts, supra,* 291 U.S. at pp. 105–106.) The jury's request was unrelated to its determination of guilt or innocence, but simply reflected a reasonable concern based upon the severity of the case it had just resolved—a robbery and murder committed by members of a gang with a documented history of violence. The jury had already reached its verdict at the time of its request to leave privately. The means by which the jury departed had no bearing on defendant's ability to defend against the charges. Defendant's presence would not have contributed to the fairness of the trial, since a verdict had already been reached and the jurors have the right to refuse to discuss the case.

Case law illustrates that the decision to allow the jury to depart through a private exit did not constitute a critical stage of the proceedings. Numerous trial situations, far more closely connected to the trial itself than that presented in the instant case, have been held not to constitute a critical stage. (See *Kentucky v. Stincer* (1987) 482 U.S. 730, 745–747 [96 L.Ed.2d 631, 107 S.Ct. 2658] [the defendant's due process rights were not violated by his exclusion at a hearing in which the trial judge determined the competency of child witnesses]; *People v. Avila* (2006) 38 Cal.4th 491, 598 [43 Cal.Rptr.3d 1, 133 P.3d 1076] [rereading of testimony is not a critical stage of a criminal proceeding]; *People v. Horton* (1995) 11 Cal.4th 1068, 1121 [47 Cal.Rptr.2d 516, 906 P.2d 478] [same]; *People v. Moon, supra,* 37 Cal.4th at p. 20 [jury view of the crime scene is not a critical stage]; *People v. Lang* (1989) 49 Cal.3d 991, 1025 [264 Cal.Rptr. 386, 782 P.2d 627] [same]; *People v. Perry, supra,* 38 Cal.4th at p. 312 [the defendant's absence from a bench conference discussing exclusion of his wife from the courtroom was not a critical stage

of the proceedings—"a defendant may ordinarily be excluded from conferences on questions of law, even if those questions are critical to the outcome of the case, because the defendant's presence would not contribute to the fairness of the proceeding"]; *People v. Rogers* (2006) 39 Cal.4th 826, 855–856 [48 Cal.Rptr.3d 1, 141 P.3d 135] [the defendant's presence at counsel's jury screening discussions would have served little purpose and the defendant had no state statutory or federal constitutional right to attend those discussions]; *United States v. Gagnon* (1985) 470 U.S. 522, 526–527 [84 L.Ed.2d 486, 105 S.Ct. 1482] [trial court's ex parte discussion with juror was not a critical stage]; *People v. Morris* (1991) 53 Cal.3d 152, 210 [279 Cal.Rptr. 720, 807 P.2d 949] [discussion of jury instructions was not a critical stage].)

As this catalogue of authorities makes clear, any discussion of the jury departure from the courtroom played no role in defendant's opportunity to defend against the charges. Discussions between a jury and court staff as to routine matters unconnected to the fairness of the proceedings do not rise to the level of a critical stage of the proceedings.

Third, assuming there was a violation of the right to be present at a critical stage of the proceedings, defendant erroneously argues that the absence of a defendant from a critical stage of the proceedings is structural error requiring reversal. "Erroneous exclusion of the defendant is not structural error that is reversible per se, but trial error that is reversible only if the defendant proves prejudice. (*Rushen v. Spain* (1983) 464 U.S. 114, 118–119 [78 L.Ed.2d 267, 104 S.Ct. 453]; *People v. Bradford* [(1997)] 15 Cal.4th [1229,] 1357 [65 Cal.Rptr.2d 145, 939 P.2d 259].)" (*People v. Perry, supra,* 38 Cal.4th at p. 312.)

"A 'structural' error, we explained in *Arizona v. Fulminante* [(1991) 499 U.S. 279, 310 [113 L.Ed.2d 302, 111 S.Ct. 1246]], is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself,' [citation]. We have found structural errors only in a very limited class of cases: See *Gideon v. Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792] (1963) (a total deprivation of the right to counsel); *Tumey v. Ohio,* 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437] (1927) (lack of an impartial trial judge); *Vasquez v. Hillery,* 474 U.S. 254 [88 L.Ed.2d 598, 106 S.Ct. 617] (1986) (unlawful exclusion of grand jurors of defendant's race); *McKaskle v. Wiggins,* 465 U.S. 168 [79 L.Ed.2d 122, 104 S.Ct. 944] (1984) (the right to self-representation at trial); *Waller v. Georgia,* 467 U.S. 39 [81 L.Ed.2d 31, 104 S.Ct. 2210] (1984) (the right to a public trial); *Sullivan v. Louisiana,* 508 U.S. 275 [124 L.Ed.2d 182, 113 S.Ct. 2078] (1993) (errone-

ous reasonable-doubt instruction to jury)." (*Johnson v. United States* (1997) 520 U.S. 461, 468–469 [137 L.Ed.2d 718, 117 S.Ct. 1544].)

*Rushen v. Spain, supra,* 464 U.S. at pages 117–119, is dispositive of defendant's argument that the decision to allow the jury to depart through a private exit was structural error requiring reversal. "Our cases recognize that the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant. 'At the same time and without detracting from the fundamental importance of [these rights], we have implicitly recognized the necessity for preserving society's interest in the administration of criminal justice. Cases involving [such constitutional] deprivations are [therefore] subject to the general rule that remedies should be tailored to the injury suffered . . . and should not unnecessarily infringe on competing interests.' [Citations.] In this spirit, we have previously noted that the Constitution 'does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.' [Citation.] There is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial. The lower federal courts' conclusion that an unrecorded *ex parte* communication between trial judge and juror can never be harmless error ignores these day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice." (*Id.* at pp. 117–118, fns. omitted.)

Defendant has made no showing of prejudice as a result of the decision to allow the jury to depart through a rear exit. In the absence of any suggestion of actual prejudice, reversal in this context would "undermine[] society's interest in the administration of criminal justice." (*Rushen v. Spain, supra,* 464 U.S. at p. 118.) Error, if any, was manifestly nonprejudicial.

### C. *The Constitutionality of Section 237, Subdivision (d), as Applied*

Defendant next argues section 237, subdivision (d), violates substantive due process as applied in this case. Defendant reasons that when the jurors were allowed to leave through a private exit, he was denied the right to attempt to speak to the jurors to develop a claim of jury misconduct. The problem was compounded, as the argument goes, when his petition to unseal the confidential juror identifying information was denied on the ground the jurors did not want to speak to anyone about the case. By allowing the jury to leave through a nonpublic exit, and determining that the jurors objected to release of their identifying information, the trial court effectively gave the jury a veto over release of the information.

### 1. *The Statutory Framework*

The statutes pertaining to the confidentiality of juror identifying information, and a juror's right to refuse to discuss a case after verdict, are found in sections 206 and 237. Section 206 codifies the jurors' right to refuse to discuss the case and prohibits unreasonable contacts with the jurors. Section 237 provides for the sealing of confidential juror information and sets forth the procedure for disclosure of that information by petition to the trial court.

■ "Section 206, first enacted in 1988, provides that '[p]rior to discharging the jury from the case, the judge in a criminal action shall inform the jurors that they have an absolute right to discuss or not to discuss the deliberation or verdict with anyone.' (§ 206, subd. (a); see Stats. 1988, ch. 1245, § 2, p. 4145.) Thus, jurors have 'an absolute right' either to speak to defense counsel, the prosecutor, or the respective representatives of either party, or to decline to do so. Section 206, subdivision (a) establishes that the decision whether or not to discuss a completed case resides with each individual juror, and a trial court's statutory obligations concerning juror contact are initially discharged by informing the jurors of their rights, under section 206, to discuss or not to discuss the case with representatives from either side of a completed criminal trial.

"After the trial court has admonished the jurors, pursuant to section 206, subdivision (a), of their rights, subdivisions (c) and (d) authorize the court to intervene to protect juror privacy. Subdivision (c) provides that '[a]ny unreasonable contact with a juror by the defendant, or his or her attorney or representative, or by the prosecutor, or his or her representative, without the juror's consent shall be immediately reported to the trial judge'; pursuant to subdivision (d), the trial court may impose monetary penalties on the offending party.

"In sum, pursuant to section 206, subdivisions (a) through (d), jurors are free to speak with counsel or their representatives, if they wish, but they also can protect themselves from invasions of their privacy (or threats of retaliation from the losing side of a lawsuit) by withholding their consent to discuss the case and, if appropriate, by registering a complaint with the trial court." (*Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1095 [86 Cal.Rptr.2d 602, 979 P.2d 963].)

"Section 237, originally enacted in 1992 and amended three times since then, now provides that the names, addresses and telephone numbers of jurors shall be sealed automatically following completion of a criminal trial. (§ 237, subd. (a)(2).) . . . In amending section 237 in 1995, the Legislature declared: 'The Legislature finds and declares that jurors who have served on a criminal

case to its conclusion have dutifully completed their civic duty. It is the intent of the Legislature in enacting this act to balance the interests of providing access to records of juror identifying information for a particular, identifiable purpose against the interests in protecting the jurors' privacy, safety, and well-being, as well as the interest in maintaining public confidence and willingness to participate in the jury system.' (Stats. 1995, ch. 964, § 1, quoted in Historical and Statutory Notes, 13 West's Ann. Code Civ. Proc. (1999 pocket supp.) foll. § 206, p. 150.)" (*Townsel v. Superior Court, supra,* 20 Cal.4th at p. 1096.)

■ "Thus, . . . sections 237 and 206, as presently written, require that the personal information of jurors, such as their names, addresses and telephone numbers, be sealed automatically following the recording of the verdict in a criminal case. (§ 237, subd. (a)(2).) 'Any person' seeking such information must petition the court and show good cause for disclosure. (*Id.,* subd. (b).) More specifically, a criminal defendant or defense counsel may obtain this information if he or she petitions the court and demonstrates such information is 'necessary' for a new trial motion or 'any other lawful purpose.' (§ 206, subd. (f).) Attorney contact with jurors is permissible, but subject to sanctions for nonconsensual or unreasonable contact. (§ 206, subds. (a)–(d).)" (*Townsel v. Superior Court, supra,* 20 Cal.4th at p. 1087, fn. omitted.)

### 2. *Defendant's Petition Pursuant to Section 237*

Defendant's petition to unseal confidential juror information was supported by a declaration from defense counsel. Counsel declared that the jury left the courtroom by a route inaccessible to the public, making it impossible to ask if the jurors would discuss the case. Counsel stated it was "unclear" whether jury misconduct occurred during the trial, but it was impossible to determine without an opportunity to inquire of any of the jurors. Counsel had no other means of obtaining information about the jurors other than through the court.

The trial court denied the petition. Defense counsel had not established good cause for disclosure, nor did he make an adequate preliminary showing of juror misconduct. The trial court also denied an oral motion for new trial made on the ground the defense was deprived of an opportunity to determine if there had been jury misconduct. The court noted it advised the jurors, by reading CALJIC No. 17.60, of their right to either discuss or refuse to discuss the case. The jurors had told the clerk they did not want to be confronted by anyone, and their request was honored. The trial court found nothing in the law requiring jurors to be confronted in the hallway in order to refuse to discuss the case.

Denial of a petition filed pursuant to section 237 is reviewed under the deferential abuse of discretion standard. (*Townsel v. Superior Court, supra,* 20 Cal.4th at pp. 1097–1098.) Defendant does not contend the trial court abused its discretion in denying the petition to disclose confidential juror information. In fact, defendant has always conceded a lack of good cause to establish jury misconduct. We therefore proceed to address defendant's constitutional claim.

### 3. *Section 237 and Substantive Due Process*

Defendant argues section 237, as applied in this case, infringes upon his right to an impartial jury because the statute permitted the jurors to control whether to discuss their deliberations and in permitting the jurors to do so, violated substantive due process. We conclude section 237, as applied, does not violate substantive due process.

■ "The term 'substantive due process' refers to a line of disparate cases which generally concludes that the guaranty of due process in the Fifth and Fourteenth Amendments includes a 'substantive' component that restricts infringement upon certain fundamental 'liberty interests.' [Citation.]" (*People v. Rodriguez* (1998) 66 Cal.App.4th 157, 175 [77 Cal.Rptr.2d 676].) "Generally, the constitutional guaranty of substantive due process protects against arbitrary legislative actions; it requires legislation not to be 'unreasonable, arbitrary or capricious' but to have 'a real and substantial relation to the object sought to be attained.' [Citation.] Thus, legislation does not violate substantive due process so long as it reasonably relates 'to a proper legislative goal.' [Citations.]" (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 [278 Cal.Rptr. 346, 805 P.2d 300].) " 'Once it is established that the general prohibition furthers the legislative goal, the Legislature has wide discretion in determining what limits will be set on the prohibition. [Citation.] As long as the statute rationally serves its purpose, it is not made arbitrary or capricious because it might have been drawn more narrowly or widely.' (*People* v. *Mitchell* (1994) 30 Cal.App.4th 783, 798 [36 Cal.Rptr.2d 150].)" (*People v. Hodges* (1999) 70 Cal.App.4th 1348, 1356 [83 Cal.Rptr.2d 619].)

The analysis under substantive due process begins with a careful description of the right asserted. (*Reno v. Flores* (1993) 507 U.S. 292, 302 [123 L.Ed.2d 1, 113 S.Ct. 1439]; *Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 141 [29 Cal.Rptr.3d 553].) Because of the inherently subjective nature of substantive due process, courts proceed cautiously when asked to break new ground under this guise. (*Washington v. Glucksberg* (1997) 521 U.S. 702, 720 [138 L.Ed.2d 772, 117 S.Ct. 2258, 117 S.Ct. 2302]; *Jimenez v. County of Los Angeles, supra,* 130 Cal.App.4th at p. 142.)

The due process right identified by defendant in this case is the right to an impartial jury, as secured by the Sixth and Fourteenth Amendments, as well as article I, section 16 of the California Constitution. No one disputes the fundamental nature of the right to an impartial jury. But careful scrutiny of defendant's argument reveals that he is not complaining of an infringement of a historical component of an impartial jury trial. Instead, defendant is seeking to extend that concept beyond the time of the verdict, to a point at which all agree jurors are free to go about their business without being required to discuss deliberations with anyone. It is with this understanding that we proceed to the second step in the substantive due process analysis.

■ "The second step in a substantive due process analysis requires the court to determine whether the right or liberty interest sought to be protected is a 'fundamental' one. [Citation.]" (*Jimenez v. County of Los Angeles, supra,* 130 Cal.App.4th at p. 142.) This analysis requires a court to determine whether the right is " 'deeply rooted in this Nation's history and tradition,' . . . and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if [it was] sacrificed.' " (*Washington v. Glucksberg, supra,* 521 U.S. at pp. 720–721, citation omitted.) "If the asserted right is not such a fundamental interest, it is not entitled to protection under the Due Process Clause of the Fourteenth Amendment." (*Jimenez v. County of Los Angeles, supra,* 130 Cal.App.4th at p. 142.) "To determine if the asserted right is 'deeply rooted,' courts look to how '[o]ur Nation's history, legal traditions, and practices' have treated the issue." (*Ibid.,* quoting *Washington v. Glucksberg, supra,* 521 U.S. at p. 721.)

■ Defendant's argument fails at the second step of the substantive due process analysis. Defendant cites to no authority for the proposition that there is a deeply rooted right in this nation's history to question the jury about its deliberative process after the verdict as a component of the right to an impartial jury. "The mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it; the alleged right certainly cannot be considered ' "so rooted in the traditions and conscience of our people as to be ranked as fundamental." ' [Citation.]" (*Reno v. Flores, supra,* 507 U.S. at p. 303.)

■ The right to an impartial jury has been historically secured by means other than postverdict juror interrogation. The right to an impartial jury is initially protected by the requirement that the jury be drawn from a fair cross-section of the community. (See *Duren v. Missouri* (1979) 439 U.S. 357, 358–367 [58 L.Ed.2d 579, 99 S.Ct. 664]; *People v. Currie* (2001) 87 Cal.App.4th 225, 232–233 [104 Cal.Rptr.2d 430].) The voir dire process plays an important role in securing an impartial jury. "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify

unqualified jurors." (*Morgan v. Illinois* (1992) 504 U.S. 719, 729 [119 L.Ed.2d 492, 112 S.Ct. 2222].) The right to an impartial jury is also protected by the prohibition against challenges to jurors based upon unconstitutional criteria, such as race. (See *Miller-El v. Dretke* (2005) 545 U.S. 231, 237–238 [162 L.Ed.2d 196, 125 S.Ct. 2317].)

██ Having determined that sections 206 and 237 do not infringe on the fundamental liberty interest in the right to an impartial jury, ██ it follows that defendant's claim is reduced to a matter of state law, under which it necessarily fails, as "strong public policies protect discharged jurors from improperly intrusive conduct in all cases, and that jurors in criminal cases, in particular, have 'an absolute right' not to discuss their verdict or deliberations with anyone. (. . . § 206, subds. (a)–(d) [criminal jurors have an absolute right to refuse posttrial discussion of verdict or deliberations; unconsented or unreasonable juror contacts are prohibited] . . . .)" (*In re Hamilton* (1999) 20 Cal.4th 273, 303, fn. 23 [84 Cal.Rptr.2d 403, 975 P.2d 600].) Our Supreme Court has made clear that " '[a] criminal defendant has neither a guaranty of posttrial access to jurors nor a right to question them about their guilt or penalty verdict.' " (*Townsel v. Superior Court, supra*, 20 Cal.4th at p. 1092, quoting *People v. Cox* (1990) 53 Cal.3d 618, 698–699 [280 Cal.Rptr. 692, 809 P.2d 351].)

██ There is no doubt that concerns for jurors' safety and privacy "must be balanced with the equally weighty public policy that criminal defendants are entitled to jury verdicts untainted by prejudicial juror misconduct. [Citations.]" (*Townsel v. Superior Court, supra*, 20 Cal.4th at p. 1092.) That balance is properly struck under the procedures set forth in sections 206 and 237. Application of those sections in the instant case did not result in a denial of due process. The jurors exercised their right not to speak to anyone, and defendant presented no evidence of jury misconduct. Denial of access to juror identifying information, in this context, did not offend due process.

II

**THE TRIAL COURT PROPERLY IMPOSED THE $20 SECURITY FEE***

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 965.

## DISPOSITION

The judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2007, S151655.