Filed 6/5/13  P. v. Polk CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>KENNETH POLK,<br><br>　　　Defendant and Appellant. | B240121<br><br>(Los Angeles County<br>Super. Ct. No. K094860) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Affirmed as modified.

Christopher A. Darden for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Kenneth Polk was convicted of attempted murder (Pen. Code,[1] §§ 187, 664) and attempted robbery (§§ 211, 664). Polk appeals, claiming multiple errors arising from a juror's revelation during deliberations that she lived in proximity to the crime scene and felt unsafe as a result, as well as ineffective assistance of counsel. We modify the judgment to correct sentencing errors but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Polk was charged with attempted murder and attempted robbery arising out of the shooting of Edward Anderson. At trial, Anderson testified that in July 2011, he arranged to purchase prescription pain medication from Polk. Anderson, who had previously purchased drugs from Polk, hoped to purchase $800 of pills as a broker for a third party, Shawn McDonough.

Anderson met Polk at a location Polk selected, and they then walked around the corner. Polk seemed very nervous and suspicious that Anderson might be a police officer. Polk demanded to see the money, so Anderson produced the $1900 that McDonough had given him.

Polk said he would return with the drugs, but instead he appeared with a chrome revolver and demanded the money. Anderson chuckled at the demand. Polk immediately shot him in the hand, then pointed the gun at Anderson's head. He pulled the trigger but the gun jammed. Anderson ran away, and Polk shot him in the back as he fled.

Anderson was able to drive away from the scene. Once he was a safe distance away, he pulled over and called for emergency services. Police found Anderson lying in a fetal position on the ground outside his truck. His colon had been penetrated by a bullet; his spine was fractured; his stomach and intestines required surgical repair; and he experienced lung problems. Officers recovered more than $2000 in bloodied cash from the truck.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

Multiple witnesses testified to Anderson's drug dealing and to his connection with Polk. Frank Fraser testified that he had introduced Polk and Anderson because Anderson wanted Xanax. On the evening of the shooting, Fraser telephoned Polk several times for Anderson. The person who answered was probably Polk, but he seemed drunk. McDonough testified that he was to be the ultimate purchaser of the prescription medications that Anderson was buying from Polk. He gave Anderson $1900 and waited for Anderson to return with the drugs. He waited 10 to 15 minutes and then saw Anderson's car pulling into the parking lot. McDonough saw Anderson stumble out of the car and that there were four men around him; he left the scene because he thought Anderson was being arrested.

Polk testified that he was a drug dealer and that he met with Anderson to sell drugs to him. He said that Anderson had told him in advance that he had been robbed before and that he would be carrying a gun. Polk found this threatening but was prepared to do business with him nonetheless. When they met, Anderson was angry. Anderson wanted to count the pills that Polk gave him, and after he had done so, he demanded 100 additional pills, stating that he had received 500 rather than 600. Polk said there were 600 pills, and asked for the money or the pills. Anderson was belligerent and hit him. Polk said, "I put my hand in my pocket like: back up. Um, I didn't brandish any weapon. I was just stating that I have a weapon, back up. Um, maybe he thought I was playing, maybe he thought I wasn't serious, but I remember him reaching for his waistband, and I was just—I just reacted off impulse, being scared that he might—he could have had a weapon, and just tried to let him not get to that waist." He started shooting because he was afraid that Anderson "would pull out his own weapon." Polk denied robbing Anderson.

During jury deliberations, the foreperson sent out a note that stated that one juror lived in proximity to Polk's family and that she feared them. At the trial court's request, the juror in question completed a questionnaire, in which she explained that she lived near Polk's mother and frequented businesses near which the events in the case took place. She stated that she could not continue to deliberate in accordance with her oath

3

and that she feared that she would be hurt by Polk's family or associates if she voted in accordance with her beliefs and found him guilty. She believed that associates of the defendant had been looking at the jury as if to try to intimidate jurors.

Defense counsel expressed concern to the court that the deliberations might have included discussion about the juror's concerns. He said, "There's no way to tell where in the process that happened. And because of the nature of the concern, I believe there's a danger of a cloud of bias that would have if it was part of the whole process of the conversation over the last couple of hours yesterday and however many minutes this morning, before the note came out. It seems to me that that would have created a pall on the process. And without knowing more, I would be forced to make a motion for a mistrial. I think at the very least the jurors need to be questioned maybe on a one-on-one basis if there is anything that has been discussed outside the realm of evidence that has affected their deliberating process," such as "[t]he one juror's concern about her perceptions of activity from the audience, and whether that was her perception or other jurors' as well, talking to her about that."

The court reminded defense counsel that jurors are entitled to consider matters beyond the evidence, such as life experiences, and expressed the concern that if the court questioned jurors about matters outside the evidence, it might "be delving into the deliberative process, and life experience and reasons." Defense counsel responded that there was no need to delve into such matters, only to ask if "there was a conversation about activity within the courtroom that wasn't . . . part of the court process, and that that affected their conversation about the court process." The court and counsel discussed the likely effect of any intimidating activity, and the court wondered aloud how the court could determine the impact on the jury. Defense counsel acknowledged that the court could not figure that out, and stated, "But my concern is only that in the beginning of the deliberative process, that was discussed. You know, the issue the juror raised, if the fear arises from the fact that the locus is endemic to their daily life, that was made evident during the course of trial, before we ever got to the end of it."

4

The court proposed instructing the jury that it was to decide the case on the basis of the evidence and that the behaviors of spectators were irrelevant and immaterial. Defense counsel agreed: "I think that's a helpful suggestion." The court said, "[W]e're talking about the subjective intentions of people in the audience, persons that we don't know what they did or who they are. The court's intention is to admonish the jury that the behaviors of spectators, if any, are not to be considered, and decide this case based solely on the testimony and evidence presented." The court denied the motion for mistrial and removed the juror who claimed to be unable to deliberate.

The court addressed the jury: "Ladies and gentlemen, once you were selected as jurors, you received the following admonition, or actually took the following oath: 'Do you and each of you understand and agree that you will well and truly try the cause now pending before the court and a true verdict render[] according only to the evidence presented to you and to the instructions of this court?' Since I have bec[o]me a judge, I have had the opportunity of facing the attorneys and jurors and spectators, and I have learned over the past 28 years that sometimes the expressions of individuals in court are natural responses, unintended in terms of trying to communicate. Some people are influenced by their familiarity or relationship with the parties. And to try and interpret the expressions or behaviors of spectators is basically to engage in idle speculation. The reactions or expressions of persons in the audience are ambiguous. They are irrelevant. They are immaterial to the issue that confronts you. You are to disregard any attempt to construe the meaning of any behaviors by spectators, and you are to judge the credibility of witnesses based on the criteria that [are] set forth in the instructions. If there are any of you who feel that you cannot do that, would you please raise your hand." No juror raised a hand.

Polk was convicted of attempted premeditated murder and attempted robbery, with all enhancement allegations found true. At the sentencing hearing, defense counsel sought a new trial on two bases: a denial of due process because it could not be known whether the removed juror's concerns tainted the deliberative process; and the jurors' receipt of "extrajudicial evidence" from the removed juror. Counsel advised the court

5

that there was no way of knowing whether there was express discussion of the removed juror's concerns and that it could not therefore be determined "whether the panel was infected by these fears and concerns." He asked to continue the sentencing hearing to permit his investigator to contact jurors to inquire whether the process was tainted. The court denied the motions for a new trial and the request to question the jury.

Polk was sentenced to life in prison for the attempted murder, plus a consecutive 25 years to life for personal and intentional discharge of a firearm, causing great bodily injury (§ 12022.53, subd. (d)). For the attempted robbery, the court stayed the sentence and the section 12022.53, subdivision (d) enhancement. The court struck enhancements on both counts under section 12022.53, subdivision (b) and (c); 12022.5, subdivision (a); and 12022.7, subdivision (a). Polk appeals.

## DISCUSSION

### I.     Refusal to Question Jurors

Polk argues that the trial court committed reversible error when it did not question the remaining jurors at the time that one juror was removed to determine whether the juror's comments during deliberations prejudiced the remaining jurors. A trial court has a duty to inquire into allegations of misconduct during jury deliberations and conduct whatever inquiry is reasonably necessary to determine whether a juror should be discharged. (*People v. Martinez* (2010) 47 Cal.4th 911, 941-942.) Whether and how to investigate allegations of juror misconduct is within the trial court's discretion. (*Id*. at p. 942.)

Here, Polk has failed to demonstrate an abuse of discretion. The trial court promptly investigated the issue relating to the troubled juror by sending in a questionnaire, and upon receiving responses indicating that she could not properly deliberate, the court excused her. Next, the trial court reminded jurors of their oath, advised them to disregard the behavior of courtroom spectators, instructed them to "disregard any attempt to construe the meaning of any behaviors by spectators, and [] to judge the credibility of witnesses based on the criteria that [are] set forth in the

6

instructions," and asked any juror who could not abide by these instructions to raise a hand. No juror raised his or her hand. This admonition and inquiry directly addressed the issue of whether the juror's concerns, expressed during deliberations, impacted the remaining jurors. Polk has not demonstrated that this advisement and question was insufficient.

Polk argues that additional inquiry might have revealed "even more extraneous information if not actual juror misconduct" occurring in the deliberation room. Polk, however, has not presented any evidence suggesting that any other information was conveyed by the juror beyond that already addressed by the trial court. With only speculation that more might have occurred, the trial court was not obligated to conduct further investigations. A hearing on juror misconduct "'should not be used as a "fishing expedition" to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred.' [Citation.]" (*People v. Staten* (2000) 24 Cal.4th 434, 466.) As Polk has neither produced evidence demonstrating a strong possibility that prejudicial juror misconduct occurred nor established any manner in which the court's inquiry to the jury panel was insufficient to establish the jurors' ability and willingness to decide the case on the evidence alone, he has not shown any abuse of discretion.

## II.    Motion for New Trial

Polk sought a new trial based on the same allegations of juror misconduct and the contention that the court had failed to conduct an adequate inquiry with the remaining jurors. Polk argues that the removed juror "clearly discussed extraneous information during deliberation," as evidenced by the foreperson's note, and that this is "proof positive" of misconduct; further, he argues, this court must presume that Polk was prejudiced by this misconduct.

A juror's receipt or discussion of evidence not presented at trial constitutes misconduct. (*People v. Dykes* (2009) 46 Cal.4th 731, 809.) Assuming that the juror's revelation that she lived in proximity to and feared Polk's family constituted misconduct,

7

we find no error in the court's denial of the new trial motion.  "Misconduct by a juror raises a rebuttable presumption of prejudice.  [Citation.]  However, we will set aside a verdict only where there is a substantial likelihood of juror bias.  [Citation.]  We will find such bias if the misconduct is inherently and substantially likely to have influenced the jury.  Alternatively, even if the misconduct is not inherently prejudicial, we will nonetheless find such bias if, after a review of the totality of the circumstances, a substantial likelihood of bias arose."  (*People v. Bennett* (2009) 45 Cal.4th 577, 626-627.)

We conclude that the removed juror's comment did not create a substantial likelihood of juror bias.  The juror's statement that she lived near Polk's family members and that she was afraid of them—the only information she is known to have shared with other jurors—created doubt that she could perform her duties, but her personal fear based on her residential proximity to those connected with the case has no logical connection to the other jurors' ability to impartially decide the case.  Nothing in the record suggests or offers a ground for concluding that her statement influenced the other jurors in any way or that it biased them against Polk.  To the contrary, when the court reminded the jurors of their oath and asked if any were unable to follow their obligation to consider the case based on the evidence and not on conclusions about spectators, no juror indicated an inability or unwillingness to follow the court's instructions.  The trial court did not err by denying Polk's motion for a new trial.

## III.    Ineffective Assistance of Counsel

Polk contends that his counsel rendered ineffective assistance when he failed to argue self-defense during summation.  To establish ineffective assistance of counsel, Polk must demonstrate that "(1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the petitioner to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the petitioner."  (*In re Jones* (1996) 13 Cal.4th 552, 561.)

8

A review of the record demonstrates that Polk's counsel did raise the issue of self-defense in closing: "Anderson got upset, said he counted it [the pills] out and it wasn't enough and he started coming at him. Anderson is 6-6, weighs 350. Mr. Polk, well, you saw him, you heard him, he's 175 pounds, 5-10. Mr. Anderson under any circumstances is an imposing individual. [¶] . . . [¶] Mr. Polk told you: I went there and I brought a gun, because when Anderson called me, he emphasized that he's going to bring a gun, that he's been robbed, that he's angry if he's messed with. Now, he brought a gun because he was concerned, he said. He started getting attacked, hit on the head, he backed up and he put his hand in his pocket, he saw Mr. Anderson make a gesture, having in mind that he was told that Anderson was carrying, he started shooting." This argument clearly encouraged the jury to conclude that Polk had acted in self-defense, and accordingly, Polk's contention that defense counsel "failed to argue the merits of his client's only defense" is belied by the record.

Polk is correct that counsel did not use the term "self-defense," but defense counsel's presentation was nonetheless sufficient to guide the jury toward the instructions on self-defense. Here, the jury was instructed on self-defense as a defense to the attempted premeditated murder charge, the availability of self-defense in the context of mutual combat or starting an altercation, and the limits of self-defense (CALCRIM Nos. 3470, 3471, 3472, 3474). Both perfect and imperfect self-defense were explained in the jury instruction on attempted voluntary manslaughter (CALCRIM No. 604). The jury, therefore, was fully instructed on the elements of self-defense and imperfect self-defense, and defense counsel's argument directed the jury toward those instructions by highlighting the evidence consistent with a self-defense or imperfect self-defense theory. Accordingly, Polk has failed to demonstrate that his counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms.

9

## IV.   Post-Verdict Request to Discover Juror Information

During arguments on the motions for new trial, defense counsel sought permission to contact and interview jurors to ascertain what the removed juror had said to other members of the jury.  As both Polk and the Attorney General observe, Code of Civil Procedure section 206, subdivision (g) authorizes the defense to seek juror contact information and specifies that these requests are to be made and considered pursuant to Code of Civil Procedure section 237.  Code of Civil Procedure section 237 requires that a petition for access to juror records be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information.  The petition and declaration are then reviewed to determine whether they establish a prima facie showing of good cause for the release of the information.  (Code Civ. Proc., § 237, subd. (b).)  Denial of a petition filed under Code of Civil Procedure section 237 is reviewed for an abuse of discretion.  (*People v. Santos* (2007) 147 Cal.App.4th 965, 978.)

Polk argues on appeal that the court "abused its discretion in determining that appellant failed to make a prima facie showing of good cause for discovery of the juror's information."  From the record on appeal, however, it does not appear that Polk filed a petition and declaration under Code of Civil Procedure section 237; no such documents are included in the clerk's transcript, and Polk refers us to the record only for the court's denial of the request.  As Polk apparently failed to file a petition with supporting declaration as required by statute, the court did not err in declining to release the jurors' identifying information.

## V.   Sentencing Error

At sentencing, the trial court imposed a sentence enhancement under section 12022.53, subdivision (d) for each of the two counts on which Polk had been convicted, staying the second.  The court then struck sentence enhancements under section 12022.53, subdivision (b); section 12022.53, subdivision (c); section 12022.5, subdivision (a); and section 12022.7, subdivision (a).  At our request, the parties

submitted supplemental briefing addressing whether the stricken enhancements should instead have been imposed and then stayed. The parties agree, as do we, that the court erred by striking, rather than imposing and staying, these sentence enhancements. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1130; § 12022.53, subd. (f).)

Polk argues that the Attorney General has waived and forfeited any right to litigate these issues on appeal, but the failure to impose the sentence mandated by law results in an unauthorized sentence subject to correction on appeal even absent an objection in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 354 [unauthorized sentence is one that could not be lawfully imposed under any circumstance in the case]; *People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6 [unauthorized sentence is subject to judicial correction whenever the error comes to the attention of the reviewing court].) Accordingly, the judgment is modified to reflect that the previously-stricken enhancements are imposed and stayed.

## DISPOSITION

The judgment is modified to impose and stay the sentence enhancements found true by the jury under section 12022.53, subdivision (b); section 12022.53, subdivision (c); section 12022.5, subdivision (a); and section 12022.7, subdivision (a). The clerk of the superior court is directed to prepare a corrected abstract of judgment reflecting that the previously-stricken enhancements are imposed and stayed, and to forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


ZELON, J.

We concur:


PERLUSS, P. J.                          WOODS, J.

11