Filed 5/12/15  P. v. Sandoval CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B254512 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA126752) |
| v. | |
| MANUEL FIGUEROA SANDOVAL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Laura R. Walton, Judge.  Affirmed.

Matthew Alger, under appointment by the Court of Appeal; Falangetti & Weimortiz and Anthony J. Falangetti for Defendant and Appellant.  [Retained.]

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James Williams Bilderback II and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The Los Angeles County District Attorney filed an information charging Manuel Figueroa Sandoval (Sandoval) with second degree murder of Rodrigo Alvarez (Alvarez) (Pen. Code, § 187, subd. (a);[1] count 1), possession of a firearm by a felon with two prior convictions (§ 29800, subd. (a)(1); count 2), and unlawful firearm activity (§ 29805; count 3). It was alleged that in committing the murder, Sandoval personally used and intentionally discharged a firearm that caused great bodily injury and death. (§ 12022.53, subds. (b)-(d).) A jury found Sandoval guilty on all counts, and found the firearm allegations to be true. The trial court sentenced Sandoval to 40 years to life, comprised of the following terms: for count 1, 15 years to life plus 25 years to life for the firearm enhancement under section 12022.53, subdivision (d); for count 2, a consecutive eight months, stayed pursuant to section 654; for count 3, a consecutive eight months, stayed pursuant to section 654. Sandoval was credited for 475 days of presentence custody.

Sandoval appeals on two grounds: (1) the trial court erred when it admitted evidence that Sandoval's girlfriend, Brianna Ray (Ray), was caught by police with 38.3 grams of heroin three days after Sandoval stole a large quantity of heroin from Alvarez; and (2) the trial court erred when it refused to disclose personal juror identifying information so he could investigate juror misconduct.

We find no error and affirm.

**FACTS**

**Prosecution Evidence**

*Background*

Sandoval lived in the City of Lake Elsinore. Sometimes his mother, Guadelia Sandoval (Guadelia), would lend him her green Jeep Grand Cherokee (Cherokee). He was friends with Alvarez and Juan Salmoran (Salmoran). In addition, Sandoval was acquainted with Peter Grbic (Grbic), who also lived in Lake Elsinore. At the relevant times, Sandoval was dating Ray.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

*The Murder; the Aftermath*

On the night of January 20, 2013, Sandoval, Ray, Grbic and Grbic's pregnant girlfriend drove from Lake Elsinore to Alvarez's house in the City of Lynwood in the Cherokee. Ray was the driver. Salmoran went to the same location, where he saw Sandoval sitting in the front passenger seat of the Cherokee. Salmoran thought he saw two other people in the Cherokee with Sandoval. Sandoval greeted Salmoran, and they conversed while waiting for Alvarez. Five or 10 minutes later, Alvarez arrived and greeted Salmoran. The three of them then went into Alvarez's garage.

Alvarez and Salmoran weighed a large amount of heroin—worth approximately $4,000 to $5,000—and placed it in baggies, which were on a table. Sandoval pulled out a wad of money and started counting it. Salmoran bent down briefly to pick up something, and heard a gunshot. When he looked up, Alvarez said, "Ay," and put both hands on his chest. Sandoval pointed a weapon at Salmoran, who fell to his knees and raised his hands. Alvarez lifted his shirt and pulled a gun from his waistband. Sandoval and Alvarez started shooting, hitting each other with bullets. Alvarez fell. Sandoval stumbled backward. While Alvarez was on the ground, Sandoval said, "Fuck you, motherfucker," and shot Alvarez twice more. Sandoval grabbed the baggies of heroin and left.

Sandoval went back to the Cherokee and told his companions that he had been shot. Ray drove them away from the house and eventually dropped Sandoval off in the City of Paramount.

After he was dropped off, Sandoval flagged down two deputy sheriffs in a patrol vehicle. Sandoval had gunshot wounds to his chest and right torso. When asked where he came from or what he was doing there, Sandoval did not provide any answers. He claimed to have been shot in Lake Elsinore or Santa Ana by some Black or Hispanic men. He was transported to the hospital and treated for three through and through gunshot wounds.

*Salmoran's Statement at the Scene; Initial Investigation; Ballistics*

Deputy Gary Butts of the Los Angeles County Sheriff's Department and his partner responded to the scene of the shooting. They found Alvarez lying dead inside the garage. He had multiple gunshot wounds, and a silver .38-caliber revolver was underneath his left arm near a pool of blood. The investigation revealed that the weapon belonged to Alvarez.

Salmoran told the deputies about the shooting. However, to avoid incriminating Alvarez in a drug sale, Salmoran said that Sandoval owed Alvarez money and had met with him to pay the debt.

When homicide detectives arrived, they found a small bindle of black tar heroin next to a trailer in the driveway, and some blood outside the garage. In the garage, they found spent shell casings and bullet fragments that had been fired from the same .40-caliber Glock semiautomatic pistol. Alvarez's revolver had six fired shell casings in the chambers.

Ballistics evidence showed that the two guns had been fired in opposite directions. Also, the .38-caliber rounds had been fired at an upward angle, and the .40-caliber rounds had been fired at a downward angle.

*Return of the Cherokee to Guadelia*

The day after the shooting, someone gave Guadelia the keys to the Cherokee and said Sandoval had been shot. When she looked in the Cherokee, she saw blood in the backseat. She found about $1,100 cash in a bag on the ground about four feet from the Cherokee. About a week later, she washed the blood out of the Cherokee.

*Sandoval's Phone Call*

Salmoran called the investigating detectives and told them that Sandoval had gone to Alvarez's house to purchase drugs.

*Ray's Possession of Black Tar Heroin*

On January 23, 2013, a deputy from the Riverside County Sheriff's Department found Ray passed out in her Camaro in Lake Elsinore with heroin paraphernalia in her

4

lap.  She was in possession of 38.3 grams of black tar heroin, which had a street value of $50 to $100 a gram depending on the grade and other factors.

## DISCUSSION

### I.  Evidence of Ray's Possession of Black Tar Heroin.

Sandoval claims that he is entitled to a reversal because the trial court committed evidentiary error and denied him a fair trial when it admitted evidence of Ray's possession of 38.3 grams of black tar heroin.  Upon review, we conclude that there was no abuse of discretion (*People v. Dixon* (2007) 153 Cal.App.4th 985, 996), and that Sandoval's fair trial claim is moot.

A. *Relevant Proceedings Below*.

During an Evidence Code section 402 hearing, the prosecutor said that he wished to call the deputy who found Ray in her Camaro.  He argued that this testimony would corroborate Salmoran's testimony that Sandoval had fled the scene of the shooting with a large amount of heroin.  Defense counsel objected, arguing that there was no evidence that the large quantity of heroin possessed by Ray was the same large quantity of heroin that Sandoval had allegedly stolen from Alvarez three days earlier.  Also, defense counsel argued that the prejudicial nature of the evidence outweighed any possible probative value.

The trial court ruled in favor of the prosecution, finding that the evidence was relevant to motive as well as Salmoran's credibility.

B.  *No Evidentiary Error.*

According to Sandoval, the challenged evidence should have been excluded because it did not give rise to a reasonable inference that Ray possessed black tar heroin that had been taken from Alvarez by Sandoval.

To address this argument, we must utilize a two-step inquiry.  First, was the evidence relevant?  Second, should it have been excluded under Evidence Code section 352 because the prejudice outweighed the probative value?  (Evid. Code, § 210; *People v. Scheid* (1997) 16 Cal.4th 1, 13 (*Scheid*).)

The evidence showed that Ray drove Sandoval to Alvarez's house in the Cherokee. Also, Salmoran testified that Sandoval shot Alvarez and took a large quantity of heroin, Grbic testified that Ray dropped Sandoval off in the City of Paramount, Guadelia testified that the Cherokee was returned to her in Lake Elsinore, and that she found about $1,100 near the Cherokee. In the context of this evidence, the testimony of the Riverside County deputy sheriff that he found Ray in Lake Elsinore in possession of 38.3 grams of black tar heroin tended """"logically, naturally, and by reasonable inference"""" (*Scheid*, *supra*, 16 Cal.4th at p. 13) to prove the source of the black tar heroin, i.e., that it was the heroin stolen by Sandoval from Alvarez. This evidence tended to support the conclusion that Sandoval shot Alvarez in order to commit a theft. It also corroborated Salmoran's testimony.

Sandoval contends that the evidence does not give rise to any reasonable inferences because it is based solely on suspicion. (*People v. Raley* (1992) 2 Cal.4th 870, 891 [a reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work].) We disagree. The inference that Ray possessed heroin stolen by Sandoval is based on credible evidence of the surrounding circumstances.

We now turn to Evidence Code section 352.

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice[.]" Prejudice for purposes of this statute "'means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of defendant's guilt.' [Citations.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 577–578.) It also means "an intolerable risk to the fairness of the proceedings or reliability of the outcome." (*People v. Booker* (2011) 51 Cal.4th 141, 188.) We will not disturb a trial court's decision to admit evidence over an Evidence Code section 352 objection "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently

6

absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

We conclude that the evidence of Ray's possession of heroin was not of the type that would have tended to evoke an emotional bias. The jury heard evidence of Sandoval's callous murder of his friend, Alvarez, in connection with the theft of a large quantity of heroin. That evidence was the most emotionally charged evidence presented. The evidence regarding Ray was tepid in comparison because it did not pertain to the crime, and it did not involve an act of brutal violence. Rather, it was evidence that did no more than establish what happened to the heroin after the theft. Moreover, it cannot be said that the evidence had very little affect on the issues. It corroborated Salmoran's testimony regarding the events, and it tended to establish that Sandoval shot Alvarez with the intent to rob him of the heroin.

For the same reasons, we conclude that the evidence regarding Ray did not pose an intolerable risk of unfairness in the trial.[2]

## II. Personal Juror Identifying Information.

Sandoval contends that the trial court should have disclosed personal juror identifying information because there was evidence of juror misconduct and he was entitled to follow up on the matter with the jurors to determine if there were grounds to seek a new trial. This contention lacks merit.

A. *Relevant Proceedings*.

Prior to the commencement of trial, the jurors were instructed not to discuss the case until after all the evidence was presented, the attorneys completed their arguments, and the trial court instructed on the law.

After completion of the trial, the jury convicted Sandoval on November 21, 2013. Subsequently, Sandoval filed a petition to obtain personal juror identifying information.

---

[2]     Sandoval argued that Ray's testimony should have been excluded because Ray's arrest was disclosed three days before trial. Appellate counsel conceded that this argument was not raised below. We deem the argument waived. (*People v. Jenkins* (2000) 22 Cal.4th 900, 949.)

It was supported by defense counsel's declaration stating, inter alia, that he interviewed Guadelia in Spanish with the assistance of his Spanish speaking secretary, and discovered: "On November 19, 2013, [Guadelia] waited outside of court room 'Q' for the start of the jury trial. . . . [Guadelia] [said] [a] juror . . . approached her to speak about the case. . . . Counsel believes [Guadelia's description of the juror] match[es] Juror #5. [¶] . . . Juror #5 asked [Guadelia], 'Do you believe in God[?]' She responded, '[Y]es I do.' [¶] . . . Juror #5 stated, 'I believe in God also. Have a lot of faith in God. I am Catholic and I spoke with 2 or 3 other jurors and they said they think your son is going to win.' [¶] . . . Juror #5 further stated, 'Out of all the witnesses the only one we believed was you, because everyone else was a bunch of liars.' [¶] . . . Juror #5 stated, 'I will pray for [Sandoval]. Have a lot of faith in God. I'm going to move because I do not want anyone to see me talking to you.'"

At the hearing on the petition, the prosecutor argued that the statements by juror No. 5 were inadmissible under Evidence Code section 1150 because they were statements about the state of mind and mental processes of the jurors. Next, the prosecutor argued that Guadelia was not credible because: (1) she tampered with evidence by washing the blood out of the Cherokee; (2) the alleged statements of juror No. 5 did not make sense, i.e., he indicated that Sandoval was going to win yet stated that Guadelia, a prosecution witness, was the only witness the jury believed; and (3) without explanation, Guadelia waited until after the jury returned a guilty verdict and was excused to report juror No. 5. Regardless, the prosecutor argued that none of the alleged statements were prejudicial to Sandoval.

In response, defense counsel argued that the statements by juror No. 5 indicated that jurors engaged in improper discussions about the case before it was submitted to them for deliberation, and that Sandoval was entitled to investigate and determine the nature and extent of their misconduct.

The trial court addressed each of juror No. 5's alleged statements. It concluded that if the jurors spoke to each other about the case during trial, that was misconduct. Also, the trial court concluded that juror No. 5 committed misconduct if he spoke to

8

Guadelia. However, the trial court denied the motion on the grounds that the alleged misconduct did not cause prejudice.

B. *No Abuse of Discretion.*

A criminal defendant may apply for access to personal juror identifying information when the information is necessary for him or her "to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose." (Code Civ. Proc., § 206, subd. (g).) The petition must be supported by a showing of good cause for the release of the information. (Code Civ. Proc., § 237, subd. (b).) "The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information, but shall not set the matter for hearing if there is a showing on the record of facts that establish a compelling interest against disclosure." (*Ibid*.)

To meet his or her burden, a defendant must make a sufficient showing of facts that would support a reasonable belief that jury misconduct occurred, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial. (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 990; *People v. Johnson* (2013) 222 Cal.App.4th 486, 497.) "Denial of a petition filed pursuant to [Code of Civil Procedure] section 237 is reviewed under the deferential abuse of discretion standard. [Citation.]" (*People v. Santos* (2007) 147 Cal.App.4th 965, 978.)

The first issue is whether there was a prima facie showing of misconduct. We note that the only evidence of misconduct were the apparent double hearsay statements of Guadelia that came through defense counsel's Spanish speaking secretary. However, the prosecution did not raise a hearsay objection. Further, it appears that the trial court accepted the truth of the matter asserted in defense counsel's declaration. On appeal, the parties do not dispute that there was a sufficient prima facie showing of misconduct. Thus, we assume misconduct in two respects: certain jurors disregarded the jury instructions and discussed the evidence prior to the case being submitted to the jury for deliberation, and juror No. 5 talked to Guadelia about the case. (*People v. Daniels* (1991) 52 Cal.3d 815, 865 [misconduct for jurors not to follow jury instructions]; *People v.*

9

*Jones* (1998) 17 Cal.4th 279, 310 ["it was misconduct for the jurors to communicate with anyone associated with the case"].)

The next issue is whether further investigation into juror misconduct was necessary to gather information for a new trial motion. Consequently, Sandoval had to establish a prima facie case that the alleged misconduct was "of such a character as is likely to have influenced the verdict improperly." (Evid. Code, § 1150, subd. (a); *People v. Jefflo* (1998) 63 Cal.App.4th 1314, 1322; *People v. Engstrom* (2011) 201 Cal.App.4th 174, 182 [a motion for new trial under Evid. Code, § 1150 requires a showing that misconduct was prejudicial].)

The trial court reasonably concluded that Sandoval failed to establish a prima facie case. Juror No. 5's religious colloquy with Guadelia was not likely to improperly influence the verdict because it tended to show a perceived affinity with her as opposed to antipathy toward Sandoval. If juror No. 5 prematurely talked about the case with other jurors and stated that it was likely that they were going to vote for acquittal, it is apparent they were not influenced because, ultimately, they voted to convict Sandoval rather than acquit. It is also apparent that they were not influenced by the determination that Guadelia was the only credible witness. Because the jury convicted, it must have found that Salmoran, Grbic and law enforcement witnesses were credible, too. Thus, further investigation was not necessary to support a new trial motion. We therefore conclude that the record fails to disclose an abuse of discretion.

According to Sandoval: "Although the misconduct may not appear to have been prejudicial to appellant, it was indicative that other misconduct had occurred. If some of the jurors had talked with one another about the case outside of the presence of the rest of the jury, they may have reached fixed conclusions and made a decision before they heard what the other members of the jury had to say. This could have been prejudicial to appellant because the jurors who committed the misconduct may have developed an intransigent position that appellant was guilty and therefore failed to take into account the input of the rest of the jury." He also suggests that "those jurors may have committed other misconduct by speaking with other witnesses or considering information outside the

10

courtroom," or they "may have announced an intent to disregard the trial court's instructions on the law."

Sandoval's arguments, in our view, are based on speculation as to how the jurors might have reached their verdict. Accordingly, Sandoval has not established good cause for disclosure of personal juror identifying information. (*People v. Wilson* (1996) 43 Cal.App.4th 839, 852.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
     ASHMANN-GERST


We concur:


_____, J.
   CHAVEZ


_____, J.
   HOFFSTADT

11